[No. 29935.  Department One.  June 21, 1946.]

MARIE E. WAMPLER, *Appellant,* v. KIAH WAMPLER, *Respondent.*[1]

[1]Reported in 170 P. (2d) 316.

*E. P. Whiting* and *George H. Bovingdon,* for appellant.

*Hyland, Elvidge & Alvord,* for respondent.

MILLARD, J.—This action was brought by plaintiff to secure a divorce from defendant. Plaintiff alleged the jurisdictional facts, marriage of the parties at Tipton, Indiana, June 25, 1940; that there is no issue of the marriage; and cruel treatment on the part of defendant. Her prayer is for restoration of her former name of Marie Ecker, and the only affirmative relief sought is divorce. As an affirmative defense, defendant pleaded that plaintiff procured a decree of divorce in the fifth judicial district of the state of Idaho, and that subsequent to the entry of that decree defendant had remarried. By reply to the affirmative matter plaintiff alleged that she was induced by defendant to proceed to Idaho, remain for a period of approximately two months for the only purpose of complying with the statute of that state in regard to residence, and obtain a decree of divorce from defendant; that at all times since her marriage to defendant in 1940 she has been domiciled in the state of Washington.

The trial court was of the view that the Idaho decree of divorce was valid, that it could not be attacked collaterally, and that plaintiff was estopped from impeaching the decree of divorce entered in her favor in the state of Idaho. All evidence tending to impeach the Idaho decree was stricken. Decree of dismissal of the action was entered. Plaintiff appealed.

The facts are as follows: Appellant and respondent were married at Tipton, Indiana, June 25, 1940, when appellant was domiciled in Indiana and respondent was domiciled in Washington. Immediately following their marriage, they became residents of Seattle, where they have at all times subsequent to their marriage been domiciled. Respondent became a major in the United States army and was stationed at Fort Lewis.

On April 9, 1943, he was a party to a bigamous marriage ceremony at Portland, Oregon, in which Alma Palmer was the bride. May 8, 1943, a child was born to respondent and

Miss Palmer. When in January, 1944, respondent was transferred to Virginia, Miss Palmer and their child accompanied him. In March, 1944, on the return of that couple from Virginia to this state, they expected the birth of another child.

Appellant was induced by respondent to go to Idaho and remain there for a period of six weeks and then obtain a divorce. Appellant remained in Idaho eight weeks and brought suit for divorce against respondent, who, in writing, acknowledged receipt at Fort Lewis of a copy of the summons and complaint which was filed with the county clerk for the county of Bannock, in the state of Idaho, July 22, 1944. A demurrer signed by the respondent and filed the same day, was withdrawn and consent given for hearing of the action without further notice and waiving all rights under the sailors and soldiers' civil relief act. A default decree of divorce, reading as follows, was entered July 31, 1944:

"IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF BANNOCK

"MARIE ECKER WAMPLER,
Plaintiff,

vs.

KIAH WAMPLER, Defendant.

DECREE OF DIVORCE

"This cause came on regularly to be heard and tried before the Hon. L. E. Glennon, one of the Judges of the above entitled Court, in Chambers, at Pocatello, Idaho, on the 31st day of July, 1944, the plaintiff appearing in person and by her attorneys, Jones, Pomeroy & Jones, and the defendant appearing neither in person nor by counsel. It appearing to the Court that the defendant has been duly and regularly served with process in said action, and has been duly summoned to answer the plaintiff's complaint on file herein; and that the defendant filed a Demurrer in the above entitled action, and thereafter withdrew the same, and refused to plead further in said action, and consented that the above entitled action be set down for trial without further notice to him, and that the default of the defendant in the premises has been duly entered herein.

"Evidence was offered and received for and on behalf of the plaintiff in support of the allegations of her complaint, from which it appears that each and every of the allegations of the complaint are true and such are found to be the facts;

"Now, THEREFORE, The law and the evidence being by the Court understood and considered,

"IT IS ORDERED, ADJUDGED AND DECREED That the bonds of matrimony now existing between the plaintiff, MARIE ECKER WAMPLER, and the defendant, KIAH WAMPLER, be, and the same are, hereby absolutely dissolved and each of the parties is hereby restored to the status of a single person.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the following described property, to-wit:

"Defense Bonds of the fact value of $225.00

"U. S. Treasury Bonds standing in the name of Marie Ecker, and of the fact value of approximately $7500.00.

"32 Shares of the capital stock of the Citizens National Bank of Linton, Indiana.

"Life insurance policy insuring the life of the plaintiff, said policy having been issued by Bankers Life Insurance Company of Des Moines, Iowa, in the principal sum of $2,500.00.

"One 1940 Pontiac Coupe Automobile

"Furniture, fixtures and household furnishings of the approximate value of $1,000.00.

"An undivided one-half interest in an apartment house located at Linton, Indiana.

be and the same is, hereby awarded to the plaintiff, Marie Ecker Wampler, as her sole and separate property.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the former name of the plaintiff, to-wit: MARIE ECKER, be, and the same is hereby restored to her.

"DATED this 31st day of July, 1944.

L. E. GLENNON
District Judge"

Immediately after obtaining the decree of divorce in the state of Idaho, appellant returned to this state, where she is still domiciled. Since the entry of the Idaho decree, appellant has used the restored name of Marie Ecker, under which she transferred property and brought an action against respondent and his reputed wife for recovery of money claimed to be due to her from respondent.

The day following the entry of the Idaho default divorce

decree, respondent and Alma Palmer were parties to a marriage ceremony at Bremerton. Four months later, another child was born to that couple.

Respondent contends that the judgment roll of a sister state, which is fair on its face, is not subject to impeachment in a collateral proceeding in this state. Respondent further argues that a person who obtains a decree of divorce in a sister state is estopped to impeach or collaterally attack such decree where the other party to the decree has married another in reliance upon the decree and a child has been born subsequent to that marrige and another child legitimatized by such marriage, where the party obtaining the foreign decree has also acted in reliance upon it.

Appellant contends that the decree of divorce entered by the Idaho court is void, hence is subject to collateral attack in the courts of this state, for the reason that the Idaho court did not have jurisdiction to grant a divorce in the action instituted by her, in that neither appellant nor respondent was ever a resident of Idaho.

■ We held in *Mapes v. Mapes,* 22 Wn. (2d) 743, 167 P. (2d) 405, that proof of residence is essential, and a divorce obtained with the aid of an assumed residence is not in good faith and does not give the court jurisdiction of the case. The question whether the courts of this state may inquire into the facts relative to the residence or domicile of appellant and respondent at the time the former sought a divorce in the state of Idaho, is foreclosed.

■ The constitution of the United States, Art. 4, § 1, provides that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state.

"Where a judgment rendered in one state is challenged in another, a want of jurisdiction over either the person or the subject matter is of course open to inquiry." *Milliken v. Meyer,* 311 U. S. 457, 85 L. Ed. 278, 61 S. Ct. 339, 132 A. L. R. 1357.

A collateral attack upon the jurisdiction of the court of a sister state to render the judgment offered in evidence, in an action brought in another state, is not precluded by the

provision of the Federal constitution which requires that full faith and credit shall be given in each state to the judicial proceedings of every other state.

■ To give courts of a state jurisdiction over a marriage relation between husband and wife, one of the parties at least must have a domicile within the state. *Mapes v. Mapes, supra; Williams v. North Carolina*, 325 U. S. 226, 89 L. Ed. 1577, 65 S. Ct. 1092, 157 A. L. R. 1366; *Andrews v. Andrews*, 188 U. S. 14, 47 L. Ed. 366, 23 S. Ct. 849.

■ A decree of a sister state or a foreign court, void for want of jurisdiction over the subject matter of the action or the parties to the action, may be collaterally attacked in the courts of this state in any proceeding instituted in this state. The record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction. If it be affirmatively shown that such facts did not exist, the record will be a nullity notwithstanding the recital that they did exist. *Dormitzer v. German Sav. & Loan Society*, 23 Wash. 132, 62 Pac. 862, affirmed 192 U. S. 125, 48 L. Ed. 373, 24 S. Ct. 221; *Mapes v. Mapes, supra; Williams v. North Carolina*, 325 U. S. 226, 157 A. L. R. 1366.

In *In re Medbury*, 192 Wash. 462, 73 P. (2d) 1340, we held that, as the evidence sustained findings that a resident of this state went to Wyoming solely for the purpose of obtaining a divorce and not with the bona fide purpose of establishing a permanent residence, a divorce obtained in Wyoming was void. That case involved a collateral attack upon the Wyoming decree.

"A judgment in one State is conclusive upon the merits in every other State, but only if the court of the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment.

" 'It is too late now to deny the right collaterally to impeach a decree of divorce made in another State, by proof that the court had no jurisdiction, even when the record purports to show jurisdiction . . .' It was 'too late' more than forty years ago. *German Savings Society v. Dormitzer*, 192 U. S. 125, 128." *Williams v. North Carolina*, 325 U. S. 226, 157 A. L. R. 1366.

*Mapes v. Mapes, supra,* involved a Nevada decree of divorce obtained by appellant upon a six weeks' residence in Nevada. Appellant claimed domicile in Nevada. The decree was regular on its face. It recited personal service upon defendant in Skagit county, a default regularly entered, and that the court had jurisdiction over the parties and the subject matter of the action. We held that the trial court did not commit error in taking evidence relative to the domicile or residence of appellant at the time she commenced her action for divorce in the state of Nevada; and that, as appellant never became a resident of that state, the Nevada court did not obtain jurisdiction to entertain the action for divorce, therefore its decree was void.

Respondent contends that appellant is estopped to challenge the validity of the Idaho decree of divorce, for the reason that she obtained that decree, the other party (respondent) to the decree has married another in reliance upon the decree, and one child has been born to respondent subsequent to the marriage by which another child of respondent was legitimated, and appellant has also acted in reliance upon the foreign decree.

Respondent is hardly in a position to successfully urge that appellant is estopped to attack the Idaho decree of divorce. One who relies upon estoppel is required to establish the fact that he is the innocent party and has changed his position to his prejudice as a result of his reliance upon the acts or representation of the party he seeks to estop. *Rowe v. James,* 71 Wash. 267, 128 Pac. 539; *Edwards v. Surety Finance Co.,* 176 Wash. 534, 30 P. (2d) 225; *Campbell Co. v. Holsum Baking Co.,* 15 Wn. (2d) 239, 130 P. (2d) 333.

While appellant no doubt desired divorce because of conditions and circumstances due to the fault of the husband, it fairly appears that the Idaho decree of divorce was obtained by appellant by reason of the insistence of respondent, who desired to marry another woman by whom he already had one illegitimate child and another on the way. Respondent advised appellant where she was to reside in Idaho and the length of time it was essential for her

to remain in that state in order to obtain a decree of divorce. He paid her expenses to Idaho and the costs incident to obtaining the decree. Other promises were made by him to induce appellant to obtain the decree.

He is not the innocent party, and there has been no change in his position to his prejudice in reliance upon the conduct of appellant. His marriage at Portland in 1943 was bigamous, and his so-called marriage in Bremerton August 1, 1944, is void. For approximately two years prior to the entry of the Idaho decree of divorce, respondent was living with the same woman he married at Portland and at Bremerton. The first child born in 1943 to that couple was not, nor was the second child born December 1944, the fruit of the void marriage at Bremerton in August 1944. The acts or conduct upon which respondent claims to rely were directed and dictated by respondent, hence there can be no estoppel.

In *Hopkins v. Hopkins,* 174 Miss. 643, 165 So. 414, the husband and wife were both domiciled in Mississippi. The husband took his wife to Alabama and persuaded her to get a divorce. Subsequently she brought suit in Mississippi against her husband for a divorce. The husband contended that the wife was estopped to challenge the validity of the Alabama decree of divorce because it was at her instance and on her behalf that it was rendered. It was held that, as the husband procured the wife to institute the proceedings in Alabama through intimidation and fraud, it was his action, not hers; therefore, the wife was not estopped to attack the Alabama decree.

In *Hollingshead v. Hollingshead,* 91 N. J. Eq. 261, 110 Atl. 19, it was held that a Nevada decree of divorce between parties domiciled in New Jersey was absolutely void for lack of jurisdiction. The husband contended in the suit brought by the wife in New Jersey for maintenance that the wife was estopped from prosecuting the action by reason of the Nevada decree of divorce, as she instituted the proceedings and obtained the decree in Nevada. The court held that the party obtaining such decree is not estopped by reason of having so obtained it from setting up its in-

validity in a suit in New Jersey. The court said in the course of its opinion that logically, where an estoppel is claimed to exist against an assertion set up by one of the parties, the determination of the issue as to whether such party is estopped from asserting his contention, precedes any inquiry into the issue upon the contention itself; and if the court finds the estoppel exists, the inquiry into the truth or falsity of the contention against which the estoppel exists, is never reached.

"But in this case, the answer to the claim of estoppel is not that the estoppel *does not exist,* but that it *cannot* exist.

"The contract of marriage is one which may not be dissolved or abrogated by the will of the parties—the state must consent and act to accomplish such dissolution. If the husband and wife signed an agreement purporting to terminate the marriage relation, it would of course be void, and neither party would be heard to claim that the other party was estopped from asserting its invalidity. The question of whether or not the acts of the litigant had or had not been such as to estop him from asserting the invalidity of the 'agreement,' whether or not the alleged estoppel *did* exist, would be precluded from consideration by the answer, and the fact, that it *could not* exist.

"So, too, if instead of signing a mutual agreement of dissolution of the marriage, the parties had gone to the minister who married them and procured him to sign a certificate purporting to divorce them. Wherein is there any difference between the last hypothesis and what the parties in this case actually did? They went to a Nevada court and procured from it what purports to be a decree of divorce, the Nevada court, under the circumstances, having no more jurisdiction, power or authority in the matter than the minister aforesaid would have had, and its decree being of no more value or validity than the minister's 'certificate' in the supposititious case.

"Is it not clear, therefore, that there *cannot* be any estoppel against the contention of complainant that the Nevada decree is, as the legislature has said, 'of no force or effect in this state?' To hold otherwise, would obviously be to hold that spouses, residents of this state, may do in this way, that which they are not and cannot be permitted to do, namely, divorce themselves without the consent and

act of this state, through its sole constituted agent in that behalf, the court of chancery." *Hollingshead v. Hollingshead,* 91 N. J. Eq. 261, 267.

It appears in *Hollingshead v. Hollingshead, supra,* that the court's decision was influenced somewhat by the fact that the wife did not obtain the fraudulent decree of her own initiative, nor was it a case where both parties colluded in that behalf for the carrying out of their mutual desires and purposes. It is clear the court was convinced that the project was that of the husband for his own benefit, so that, like the case at bar, the husband might be free to marry the woman with whom he was infatuated and whom he subsequently married.

It is a settled rule that a court of a state within whose jurisdiction neither one of the parties to a divorce suit is bona fide domiciled, has no jurisdiction to render a divorce decree which would be binding in other states under the full faith and credit provision of the Federal constitution. *Mapes v. Mapes, supra.*

"It is a universal rule of law that parties cannot, by consent, give a court, as such, jurisdiction of subject matter of which it would otherwise not have jurisdiction. Jurisdiction in this sense cannot be obtained by consent of the parties, waiver or estoppel." 14 Am. Jur. 380, § 184.

The better reasoned authorities are to the effect that the doctrine of estoppel to assert the invalidity of a foreign decree of divorce is not applicable where the subsequent action in which the doctrine is sought to be applied is a matrimonial action—as where a wife who has obtained an invalid foreign decree sues in the state of her domicile for a divorce—although the other party has remarried in reliance upon the validity of the foreign divorce.

See *Querze v. Querze,* 290 N. Y. 13, 47 N. E. (2d) 423, in which it is held that, while a void foreign divorce may prevent spouse who obtained it from asserting private claim or demand, it has no effect upon right to adjudication as to marital status.

In *Holt v. Holt,* 77 F. (2d) 538, the wife instituted an action in the District of Columbia for a divorce. The

husband pleaded a Nevada decree in a proceeding in which the wife had appeared and answered. The court held that the Nevada divorce, which was obtained by the husband, was void and not enforcible in the District of Columbia. In that case, both spouses were domiciled in the District of Columbia throughout period of litigation, and wife went to Nevada, where she was served with process and filed answer prepared by husband's attorney.

In *Lippincott v. Lippincott,* 141 Neb. 186, 3 N. W. (2d) 207, 140 A. L. R. 901, the wife brought an action for divorce in Nebraska. The husband's defense was that the wife obtained a decree of divorce in Nevada and that he had subsequently remarried. The court held that ordinarily if a wife instituted divorce proceedings in Nevada, where both parties were nonresidents, on her own initiative, and obtained a void decree in Nevada, she would be estopped from setting up its invalidity in Nebraska; but if she was under the domination of her husband, who planned the divorce, paid the attorneys and witnesses, then there arises an estoppel against an estoppel which sets the matter at large. In the case cited, as in the case at bar, the whole plan of the foreign divorce was the work of the husband, who alone had a motive to secure one.

*Starbuck v. Starbuck,* 173 N. Y. 503, 66 N. E. 193, 93 Am. St. 631, in which it is held that a party may not be heard to impeach a decree or judgment which he himself has procured to be entered in his own favor, involved an attempt of the former wife of the decedent to recover dower in real estate in New York. On her own application, when she was domiciled in Massachusetts some years prior to her action to recover dower in New York, she obtained a decree of divorce from the deceased. She remarried. The husband subsequently remarried and accumulated property in New York in which the first wife claimed dower as his widow. The case is distinguished in *Stevens v. Stevens,* 273 N. Y. 157, 7 N. E. (2d) 26, 109 A. L. R. 1016, in which the court said that, although the elements of a true estoppel against the wife were not established in *Starbuck v. Starbuck, supra,* plainly exclusion of the truth contradictory of the

Massachusetts decree was deemed to be necessary in the due administration of justice.

To give courts of a state jurisdiction over a marriage relation between husband and wife, one of the parties at least must have a domicile within the state. *Mapes v. Mapes, supra.* A decree of divorce may be impeached collaterally in the courts of another state by proof that the court granting it had no jurisdiction because neither of the parties had a domicile within the foreign state, even when the record purports to show such jurisdiction and the appearance of the other party.

The doctrine of estoppel to assert the invalidity of a foreign judgment or decree does not apply where, as in the case at bar, the subsequent action in which the doctrine is sought to be applied is one for adjudication as to marital status, even if respondent remarried in reliance upon the validity of the void Idaho decree of divorce procured by appellant wife.

The decree is reversed, with direction to trial court to reinstate the action.

BEALS, C. J., STEINERT, SIMPSON, and MALLERY, JJ., concur.

[1]Reported in 170 P. (2d) 311.