[No. 30524.  Department One.  March 28, 1949.]

*In the Matter of the Estate of* JOHN TAMKE, *Deceased.*
FRED W. TAMKE, *Appellant,* v. MAY TAMKE, *Respondent.*[1]

[1]Reported in 204 P. (2d) 526.

*Emory, Howe, Davis & Riese* and *Robert M. Burgunder,* for appellant.

*John J. Kennett,* for respondent.

JEFFERS, C. J.—On July 31, 1947, Fred W. Tamke, brother of John Tamke, deceased, filed a petition in the superior court of the state of Washington for King county, asking that he be appointed administrator of the estate of John Tamke. It is alleged in the petition, among other things, that decedent left as his heir his father, William F. Tamke, and that petitioner is the nominee of William F. Tamke. The petition further alleges that deceased left real and personal property in King and Kitsap counties, Washington, of the probable value of fifteen thousand dollars.

On August 11, 1947, May Tamke, alleging that she was the wife of John Tamke at the time of his death, notwithstanding a purported decree of divorce entered by the courts of the state of Nevada, filed objections to the appointment of Fred W. Tamke as administrator of the estate. On August 18, 1947, May Tamke, alleging that she was the surviving wife of John Tamke, deceased, filed a petition in the superior court for King county, asking that she be appointed administratrix of the estate. On September 19, 1947, Fred W. Tamke filed objections to the appointment of May Tamke as administratrix of the estate of John Tamke, deceased.

The cause came on for hearing before the trial court on the pleadings above referred to. Witnesses were sworn and testified, and on October 15, 1947, the court filed a written opinion. Thereafter, on December 16, 1947, the court made and entered an order appointing May Tamke as administratrix of the estate of John Tamke, deceased. It is recited in this order

". . . that May Tamke was the lawful wife of the deceased at the time the deceased died, and is legally competent and entitled to letters of administration of said estate; and the court being otherwise fully advised in the premises, does now:

"ORDER that letters of administration of the above estate be issued to May Tamke upon her taking the oath and filing a bond according to law in the sum of $9,000.00."

A motion for new trial was timely made by Fred W. Tamke, and was by the court denied on December 16, 1947. Fred W. Tamke gave timely notice of appeal to this court from the order of December 16, 1947.

Appellant makes some nine assignments of error.

Many witnesses were sworn and testified in this cause, and the statement of facts consists of some five hundred twelve pages. The following general statement, together with such additional references as may be made in the course of this opinion, we think sufficient to show the factual situation upon which our conclusions are based.

We have heretofore recited the pleadings which were filed in this case, and it appears that decedent, John Tamke, left a surviving father, William F. Tamke, who nominated and consented to the appointment of his son, Fred W. Tamke, as administrator.

May Tamke and John Tamke were married in Tacoma on December 15, 1923. There are no children the issue of such marriage. All of the real and personal property in this estate, with the exception of a small piece of real estate in Kitsap county, was acquired between the date of the marriage and the death of John Tamke on July 16, 1947. Difficulties had existed for some time between May and John Tamke, and in 1930 she moved to a separate abode with her

sons, but the marital relations between the parties apparently continued until 1942.

On August 30, 1941, May Tamke made, executed and delivered to John Tamke, a quitclaim deed to lots 4 and 5, block 10, Manchester Heights, division 4, and lots 11 and 12, block 16, replat of Manchester Heights, Kitsap county. There is a recited consideration of ten dollars in the deed. This instrument contains, among others, the following provision:

"The party of the first part quit claims all right & equity to the above described property."

On the same day, May Tamke also made, executed, and delivered to John Tamke a quitclaim deed to lots 40 and 41, block 18, Ladd's 2nd Addition to the city of Seattle. The stated consideration in this deed is ten dollars, and it also contains the same provision as that contained in the deed to the Kitsap county property. The real estate described in the two deeds is the same as that set out in the inventory filed by May Tamke after her appointment as administratrix, and is the real estate in which she is claiming a community interest.

Early in 1942, May Tamke left Seattle alone by automobile and drove directly to Las Vegas, Clark county, Nevada, where immediately after six weeks residence she filed an action for divorce against her husband, John Tamke. The divorce complaint was filed on May 19, 1942, and the decree of divorce was signed and entered on May 25, 1942. An appearance and waiver was filed by the defendant, John Tamke, on May 25, 1942.

Before returning to Seattle, May Tamke entered into a marriage ceremony with a sailor named Earl A. Lavier, who had been a neighbor of hers and whom she had known in Seattle, and who was then stationed in San Diego. The ceremony was performed in Yuma, Arizona, on May 31, 1942. Sometime thereafter, Mr. and Mrs. Lavier returned to Seattle. Difficulties arose between the Laviers, resulting in the filing of an information charging May Lavier with the crime of assault in the first degree committed against

Earl A. Lavier. This information was filed on January 7, 1947. Upon motion of the prosecuting attorney of King county, this criminal action was dismissed on March 31, 1947.

The purported marriage between May Tamke Lavier and Earl A. Lavier was annulled by the superior court for King county on September 16, 1947. This date, it will be noticed, was some two months after the death of John Tamke, and almost two months after the petition of Fred Tamke, asking for his appointment as administrator of the estate of John Tamke, deceased, had been filed. According to the findings of fact and conclusions of law entered in the annulment action, the purported marriage of May Tamke to Earl A. Lavier, at Yuma, Arizona, on May 31, 1942, was void and of no legal force or effect, and the same was annulled by the judgment entered in that proceeding. The decree in the annulment proceeding was apparently based upon a finding, among others, that May Tamke went to the state of Nevada at the request of John Tamke for the express and sole purpose of obtaining a divorce from John Tamke, and that at that time neither May Tamke nor John Tamke had ever been a resident of the state of Nevada. It is apparent, of course, that John Tamke was not a party to the annulment proceeding, and that the decree therein was not entered until some two months after his death.

There is testimony to the effect that John Tamke put up three thousand dollars cash bail for May Tamke Lavier to procure her release from jail at the time the criminal charge against her was made, to which we have heretofore referred.

Sometime after May Tamke Lavier's return to Seattle, and apparently about the time the criminal charge above referred to was made, Mr. John Kennett, who represents May Tamke in this action, and was her attorney in the annulment proceedings, and represented her in the criminal proceedings, testified to certain statements made in his office by John Tamke relative to the reason why May Tamke went to Nevada for the purpose of procuring a divorce. It

was apparently about this time that May Tamke Lavier was informed by Mr. Kennett that her divorce proceedings in Nevada were invalid; that she was still the wife of John Tamke; and that, this being true, her marriage to Lavier was not valid.

The main contention of appellant, which we think if sustained in this case is controlling, is that this is not a "matrimonial action," but one for the purpose of asserting private rights, and that, this being true, respondent May Tamke cannot herein attack the divorce proceedings in Nevada, which were instituted by her, and the judgment therein rendered; that, this being true, in so far as this action is concerned, there is no competent evidence showing that respondent is the surviving spouse of decedent, John Tamke; that it follows that May Tamke Lavier, not having been shown to be the surviving spouse of John Tamke, deceased, is not entitled to be appointed administratrix of his estate, and the judgment of the trial court should be reversed.

While the facts in this case are somewhat involved, and there was much argument over the admission of certain testimony and refusal to submit other testimony, we are of the opinion that the basic issue before this court is whether or not May Tamke Lavier can in this action assert the invalidity of the Nevada divorce, valid on its face and procured by her, as a basis for her contention that she was the wife of John Tamke at the time of his death.

It may be stated here that it appears from the complaint filed in the county of Clark, state of Nevada, by May Tamke that there were no children the issue of the marriage between her and John Tamke, and that there was no community property to be adjudicated by that court. It is further alleged in that complaint that for more than three consecutive years last past, plaintiff and defendant, as husband and wife, had lived separate and apart, without cohabitation.

Considerable stress is placed upon the fact that in the annulment proceedings the superior court of the state of

Washington for King county granted to May Lavier a decree of annulment, the decree concluding as follows:

"And the court being fully advised in the premises, does now:

"ORDER, ADJUDGE and DECREE that the purported marriage of plaintiff and defendant at Yuma, Arizona, on May 31, 1942, was and is void and of no legal force or effect, and the same is hereby annulled, set aside and held for naught.

"DONE IN OPEN COURT this 16th day of September, 1947."

The marriage between May Lavier and Earl A. Lavier, which the court annulled, was contracted, as has been stated, in Yuma, Arizona, on May 31, 1942, which was approximately one week after May Tamke had been by the Nevada court granted a divorce from John Tamke. The decree in the annulment proceedings was apparently based upon the fact that neither May Tamke nor John Tamke was a resident of the state of Nevada at the time the decree was entered—in other words, that that court had no jurisdiction over either of the parties; that the Nevada decree was void; and that May Tamke was the lawful wife of John Tamke at the time she went through a marriage ceremony with Earl A. Lavier at Yuma, Arizona.

The question is raised as to what, if any, effect in this proceeding is the decree of annulment above referred to. In determining this question, we, of course, should keep in mind that John Tamke was not a party to that action, and was deceased at the time the decree was entered. It is our opinion that, in an action against John Tamke, the annulment proceedings would have constituted no proof that May Tamke was still his wife, and if such proceedings could not have been asserted against John Tamke in his lifetime, certainly they cannot be admitted here as any proof that May Tamke was the wife of John Tamke at the time of his death. We are convinced, therefore, that some other competent and independent proof would have to be made before it could be held that May Tamke was in fact the wife of John Tamke at the time of his death.

■ It is the general rule that a party may not be heard to impeach a decree or judgment which she has procured to be entered in her own favor. There is, however, an exception to this general rule, to the effect that if the action in which the invalidity of a foreign divorce decree is asserted by the party procuring it, concerns the adjudication of the *marital status* as between the parties to the claimed void foreign decree, the one who procured the claimed invalid foreign divorce decree is not estopped from asserting its invalidity. See 109 A. L. R. 1019, 1021. We have recognized the application of this exception in *Wampler v. Wampler,* 25 Wn. (2d) 258, 170 P. (2d) 316, wherein we said:

"The doctrine of estoppel to assert the invalidity of a foreign judgment or decree does not apply where, as in the case at bar, the subsequent action in which the doctrine is sought to be applied is one for adjudication as to *marital status,* even if respondent remarried in reliance upon the validity of the void Idaho decree of divorce procured by appellant wife." (Italics ours.)

In the cited case, which was an action brought by the plaintiff to secure a divorce from the defendant, we held that that was an action to determine the *marital status,* and reversed the trial court, which had held that the plaintiff could not impeach a divorce decree theretofore obtained by her in Idaho. Appellant in the instant case, while relying upon the above quoted statement and other references in the *Wampler* case, distinguishes the *Wampler* case from the case at bar on the theory that the instant case is not one brought to adjudicate "marital status," but is brought for the purpose of determining certain private rights or interests of May Tamke Lavier, namely, her right to be appointed administratrix in this action and her right, if any, to certain property of the deceased claimed by her to be community property. Respondent, however, contends that, of necessity, in the instant case the marital status must be determined, and in support of her position mainly relies on the case of *In re Hensgen's Estate,* 80 Cal. App. (2d) 78, 181 P. (2d) 69, from which we quote:

"Appellant, however, contends that respondent Thelma Hensgen is estopped from attacking the validity of the former's marriage to decedent. We are not unmindful of the cases holding that a party may be estopped to assert the invalidity of a divorce decree secured by or acquiesced in by him (at least when he seeks by such assertion to secure property rights, as distinguished from a determination of the marital status), even though such decree be void for want of jurisdiction. [Citing cases.] Neither are we unmindful of the rule that where the question in controversy relates to the property rights or pecuniary interest of the parties as distinguished from their marital status, the doctrine of estoppel is applicable under circumstances properly calling for its application. But the instant proceeding is not of the character first above mentioned. This is not a proceeding to determine heirship. It involves the appointment of an administratrix. The filing of a contest squarely presented to the court the question of determining the marital status of the parties claiming the right of appointment as administratrix, viz., who was the legal wife of decedent at the time of his death?"

A reading of the above cited case will reveal that it involved a contest as to which of two women was in fact the wife of Carl Hensgen at the time of his death, and it may be further stated that it appears from the opinion that Thelma Hensgen, who the court determined was the surviving spouse, was not in that proceeding seeking any pecuniary benefit or gain.

In support of his position, appellant refers to the statement heretofore quoted from *Wampler v. Wampler, supra,* and also cites the case of *Starbuck v. Starbuck,* 173 N. Y. 503, 66 N. E. 193, 93 Am. St. 631, referred to and quoted from in the *Wampler* case. The *Starbuck* case was one in which the wife procured a divorce from her husband in Massachusetts, the parties at all times residing in the state of New York. Later, in attempting to claim a dower right in the estate of her former husband in New York, she attempted to assert the invalidity of the Massachusetts divorce procured by her. This case has been quite universally cited as one in which the estoppel doctrine has been applied in barring the wife from asserting the invalidity of a foreign

divorce. A careful reading, however, of the case will reveal that the court did not believe a true estoppel situation was presented, because there was no change of position in reliance on the claimed invalid divorce. The court, while recognizing that an estoppel situation could arise in this type of case, did not apply the rule. Instead the court stated:

"We prefer to rest our decision upon the principle that the plaintiff, having invoked the jurisdiction of the Massachusetts court and submitted herself thereto, cannot now be heard to question the validity of its decree."

In arriving at the above decision, the New York court relied very largely on the case of *Matter of Swales Estate,* 60 App. Div. 599, 70 N. Y. Supp. 220, affirmed upon the opinion of the appellate division in 172 N. Y. 651, 65 N. E. 1122. In the *Swales* case, the petitioner had obtained a divorce from the decedent and remarried, and thereafter attempted to set up the invalidity of the divorce in order to substantiate her claim that she was the widow of the deceased. In commenting upon the *Swales* case, the opinion in the *Starbuck* case, *supra,* states:

"We think the case under consideration cannot be distinguished from that of *Swales* or *Morrison* [52 Hun 102]. It is true that in the *Swales* case the petitioner was seeking administration instead of dower, but if she was the widow of the decedent she had a statutory right to administer the estate, and the plaintiff in her action for dower has no greater right. In the *Swales* case the petitioner after procuring her decree of divorce had remarried. In this case the plaintiff procured her divorce, but did not remarry; but it does not appear to us that this distinction affects the legal proposition involved."

It seems to us the effect of both the *Starbuck* and *Swales* cases is to hold that the right to dower and the right to administer an estate are private rights or demands, and thus make applicable the general rule barring the party who procured the divorce from asserting its invalidity.

Because of the seeming inconsistency between the jurisdiction of California and of New York, we have made some considerable study of the rule and its exceptions, and have

found, as stated in 153 A. L. R. 943, that at one time there was a hopeless conflict in the decisions as to the application of the doctrine of estoppel, some cases holding that it was applicable on the broad theory that a person should not be allowed to deny the legal effect of his own act in procuring a foreign decree of divorce, other cases holding that it was not applicable on the theory that the doctrine had the effect of nullifying the equally imbedded doctrine of denying recognition to invalid foreign decrees of divorce and thereby circumventing the well-established public policy in that regard. As time went on, the courts of New York began to draw a line between matrimonial actions and actions involving litigation as to private rights of the spouses, holding the doctrine inapplicable in the first instance and applicable in the second, on the theory that, in matrimonial actions, someone other than the immediate parties, namely the state, has an interest in the outcome of the litigation, and that public policy in respect to, and the public interest in, the maintenance of the marital status overweighs any equitable considerations applicable between private litigants based on the doctrine of *in pari delicto*, or "clean hands." See 153 A. L. R. 943; *Querze v. Querze*, 290 N. Y. 13, 47 N. E. (2d) 423.

█ It is our belief that the rule announced by the New York cases is based upon a sound policy, and if it can be said that the facts in the California case to which we have heretofore referred, and which is cited by respondent, announces a rule inconsistent with that announced by the New York courts, we are of the opinion that the rule announced by the New York courts should be followed, and we think, as a matter of fact, that this court has so indicated in the *Wampler* case, *supra*. Many private rights are determined by the marriage relationship, and are to be distinguished from cases which involve the marital status itself, as the term is used in these cases. In referring to *marital status*, it is our belief that the courts are dealing with and intend the rule to be applicable to cases in which the main issue is the *continuance or dissolution of an admitted relationship* and the effect of a prior ineffective action, which

attempted to settle the question, on a subsequent action to settle the same issues; in other words, a case such as the *Wampler* case, *supra*. See *Querze v. Querze, supra,* where the New York court, in referring to the *Starbuck* case, distinguished the cases in which the wife attempted to assert the invalidity of a foreign decree in order to obtain a *private claim or demand,* and the cases where it was sought to have a full adjudication upon the question of the *existing marital status.*

In the case at bar, the marital status itself was conclusively determined, in so far as respondent is concerned, if not by the Nevada divorce, by the death of decedent. Its continuance or dissolution could no longer be an issue. Therefore it would seem to us to follow that the only question left to be determined is the private rights, if any, of May Tamke Lavier, which, of course, in turn are based on her ability to prove by competent evidence certain facts relative to a past marital relationship.

■■ Respondent further contends that, regardless of whether we find this action is one to determine marital status, or whether it is brought to obtain a private right or demand, appellant cannot raise the bar against allowing respondent to show the invalidity of the Nevada decree, because the deceased was the activating force in having respondent go to Nevada and obtain a divorce. It may be admitted that in some instances the innocent wife is deemed to need protection, and the contention asserted by respondent is applied. However, it is apparent from the cases that mere fraud or misrepresentation are insufficient to invoke the rule. The party who procured the divorce must show that the fraud or misrepresentation or the compelling acts amounted to duress and compulsion, so that the divorce is not that of the procuring party but that of the party forcing the issue. See *Cohen v. Randall* (1943; CCA 2d), 137 F. (2d) 441, as discussed in 153 A. L. R. 943, from which we quote:

"A wife . . . could not attack the validity of the Nevada divorce on the ground of lack of residence by her in Nevada, and on the ground that the husband induced her

to enter into the separation agreement by means of false and fraudulent representations as to the amount of property he owned, except for which she would not have entered into that agreement or obtained the Nevada divorce; and consequently, she was not entitled to share in the distribution of her deceased husband's estate, in view of the New York statute denying such right to a spouse who has procured without the State of New York a final decree of divorce dissolving the marriage, where such decree is not recognized as valid by the laws of New York. The court conceded, however, that New York has allowed a wide attack in her courts on such foreign decrees, even by persons who have secured them, and that it was settled in that state that either party to a foreign divorce may attack it as void in an action to settle matrimonial status. It was reasoned that while the husband's fraud may in such cases justify relief to an innocent wife, that is not true where she has herself procured the divorce, and that in the latter situation, in addition to fraud or misrepresentations, there must be coercion or duress on the part of the husband such as to make the divorce action that of the husband, not of the wife, and that the fraud alleged in the present case did not rise to the level of coercion or duress."

To substantiate the holding in the above case of the necessity of finding that the acts of the compelling party amounted to duress or compulsion, thereby making the divorce action actually that of the husband or party committing the fraud, the circuit court of appeals cited the case of *Robinson v. Robinson,* 77 Wash. 663, 138 Pac. 288, 51 L. R. A. (N.S.) 534, wherein a wife who was successful in obtaining a divorce attempted to have it set aside on the ground that the husband had misrepresented facts to her in urging her to divorce him. The court determined that the facts as alleged showed nothing more than a collusive arrangement to obtain the divorce. In that case we again cited the general rule heretofore announced:

" 'A party cannot avail himself of a defense or of a right to recover by means of an invalid decree or judgment obtained by him; but, on the other hand, he may not be heard to impeach a decree or judgment which he himself has procured to be entered in his own favor.' [*Starbuck v. Starbuck,* 173 N. Y. 503, 66 N. E. 193, 93 Am. St. 631.]

"This is undoubtedly the general rule; there may be exceptions. If the petition, when read as an entirety, showed that the appellant was in fact acting under duress, she might be exempt from the rule stated, but no such fact appears.

"The fact that perjured testimony may have been offered to secure the decree affords no ground for vacating it. [Citing authority.]

"We think the petition, when fairly read, shows nothing more than a collusive arrangement to obtain the divorce."

The court held this was not sufficient allegation to set aside the decree. The court also discussed the case of *Graham v. Graham*, 54 Wash. 70, 102 Pac. 891, in which the court found there was duress and compulsion, and a decree was entered vacating the divorce in favor of the one who had obtained it.

Mr. John Kennett is the only witness whose testimony, in our opinion, really had a direct bearing on the participation John Tamke may have had in persuading his wife to go to Nevada for the purpose of procuring a divorce, and it may be admitted that from the testimony of Mr. Kennett a conclusion could be drawn that there was some collusion on the part of John Tamke and his then wife, May Tamke, in procuring the Nevada divorce.

There is considerable criticism in the record of Mr. Kennett because he testified in this action on behalf of his client, May Tamke. The facts related by him were obtained from John Tamke on or about the 6th or 7th of January, 1947, at which time the latter came into Mr. Kennett's office with a son of May Tamke by a former marriage, relative to furnishing bail for May Tamke Lavier, who was then confined in the county jail on a charge of assaulting her husband, Mr. Kennett at that time representing May Lavier. It was at about this time, according to Mr. Kennett, that the information he obtained from John Tamke led him to advise both May Lavier and Mr. Tamke that their divorce in Nevada was not legal, and that they were still man and wife. However, regardless of that fact, it appears that in March of 1947, apparently Mr. Kennett obtained an affidavit from Earl Lavier, the effect of which was to procure the dis-

missal of the charge against May Lavier, which affidavit stated in part that he, Earl Lavier, was the husband of May Lavier, the defendant in the assault action, and that he did not wish to testify against the defendant, and requested that the action be dismissed.

That affidavit was sworn to before Mr. Kennett, which, as we have intimated, was some considerable time after Mr. Kennett had received information used as the basis for informing May Tamke Lavier that she was still the wife of John Tamke. Mr. Kennett, when interrogated as to whether or not he had informed the court that in his opinion Earl Lavier and May Lavier were not husband and wife, or whether he had told Earl Lavier that in his opinion May Lavier was not his lawful wife, he stated that he had not; that he did not think it was for the best interests of his then client, May Lavier, to reveal what he considered to be the status of May Tamke Lavier and John Tamke until after the dismissal of the criminal charge.

Mr. Kennett contended before the trial court, and contends here, that the ends of justice required that he testify in this case. We have no further comment to make on his testimony. Reference is made by appellant to our statements in *In re Torstensen's Estate,* 28 Wn. (2d) 837, 184 P. (2d) 255, and we can add nothing more to what was therein said. We did not hold in that case that, even under conditions such as were shown to exist, the attorney was incompetent to testify. Assuming in this case that, because of the trial court's refusal to receive certain testimony, the ends of justice required that Mr. Kennett testify, and giving full weight to his testimony, it shows nothing more, in our opinion, than that John Tamke, for reasons of his own, desired a divorce and asked May Tamke to go to Nevada to obtain it.

There is certainly no showing that May Tamke was ever under any apprehension or fear as to what might happen if she did not go to Nevada, or if she attempted to resist the efforts of John Tamke in urging her to go to Nevada. The evidence showed that she went there alone; that she was at no time under the domination of John Tamke while in Ne-

.vada; that, as stated, she alleged there was no community property to be adjudicated in that action; that practically one week after obtaining her divorce in Nevad¡, she proceeded to San Diego, and from there to Yuma, Arizona, where she married Earl Lavier, whom she had previously known in Seattle; that, so far as this record shows, no claim of any kind was ever made by May Tamke against John Tamke, or to h.'m, that the Nevada divorce was not valid, or that she had any interest in any property which the Tamkes may have owned at the time she went to Nevada, until 1947, although she returned to Seattle about July 5, 1942, and has since resided there, except for short periods when she was with Lavier in the East prior to his discharge from the navy.

We are of the opinion that the testimony in this case relative to the participation of John Tamke was not such as to bar appellant from enforcing the application of the doctrine which prohibits respondent in this action from raising the invalidity of the Nevada decree.

It is also contended that the actions of John Tamke, subsequent to January, 1947, at which time Mr. Kennett testified he informed John Tamke and May Tamke Lavier that the Nevada divorce was void and that they were still man and wife, were such as to indicate that he recognized May Tamke Lavier as his wife, and this recognition should bar appellant from asserting that the divorce was not a nullity. We have been unable to find any evidence which to our minds is conclusive that John Tamke ever resumed the marital relationship with May Tamke after he was informed by Mr. Kennett as to what the latter believed the legal status of the parties to be.

We are not, in this action, applying the doctrine of estoppel, for in our opinion there is no showing of a change of position on the part of John Tamke in reliance upon the Nevada divorce. We recognize, as does the *Starbuck* case, *supra,* that situations could arise in this type of case wherein estoppel would be an appropriate term. However, we think the opinion in this case should rest, and we do rest our holding, on the general rule hereinbefore stated, that although a decree or judgment is invalid in another state as an inde-

pendent proposition, its invalidity may not be raised in this state by the party at whose instance and in whose favor it was rendered, under conditions such as those shown to exist in this case.

In view of the conclusions we have reached, it is our opinion that it was not shown in this case that May Tamke was the wife of John Tamke at the time of his death, and it follows, therefore, that she had no right as such wife to be appointed administratrix of his estate, and the court erred in holding that she was the wife of John Tamke at the time of his death and, being otherwise qualified, was entitled to be appointed as such administratrix.

We have not set out the assignments of error, but our discussion has in fact covered appellant's assignments of error Nos. 1, 4, 5, 8, and 9.

In view of our conclusion, we do not deem it necessary to answer the other contentions raised by the briefs in this case, and we are not in this opinion passing upon the status of any property inventoried in this estate.

The judgment of the trial court should be, and it is, reversed, with instructions to set aside the order appointing May Tamke administratrix of the estate of John Tamke, deceased, and to proceed to take such further testimony, if any, as may be necessary relative to the appointment of an administrator of the estate of John Tamke, deceased, based on the petition of Fred W. Tamke, filed herein.

BEALS, MALLERY, and HILL, JJ., concur.

STEINERT, J., concurs in the result.