[No. 32682.   *En Banc.*   December 13, 1954.]

*In the Matter of the Estate of* ALFRED ENGLUND, *Deceased.*
IDA DAHLBERG *et al., Respondents,* v. PEARL ENGLUND, *as Administratrix, Appellant.*[1]

[1]Reported in 277 P. (2d) 717.

*Oliver R. Ingersoll, Ronald W. Sholund,* and *Harry Ellsworth Foster,* for appellant.

*O'Leary, Meyer & O'Leary,* for respondents.

SCHWELLENBACH, J.—Alfred Englund died intestate March 5, 1951, in Thurston county, Washington, and appellant, as his surviving spouse, was appointed administratrix of his estate. Ida Dahlberg, sister of the decedent, for herself and other collateral heirs, filed a petition asking that Pearl Englund be removed as administratrix and that she be appointed in Mrs. Englund's stead. The petition alleged that the marriage of Alfred and Pearl Englund was not legal for the reason that Pearl Englund's prior divorce from Chris Tashos was granted by an Idaho court at a time when neither of the parties to the divorce action was domiciled in Idaho.

Pearl and Chris Tashos intermarried in Montana in 1919. In 1921, they moved to the state of Washington. From 1922 until the commencement of the divorce action, they lived together on a farm near Rochester, in Thurston county.

Pearl met Alfred Englund in 1942, and they began discussing marriage with each other in 1944. She continued living with Chris Tashos on the farm until July 14, 1949, on which date she went to Coeur d'Alene, Idaho, taking with her four suitcases, in which she had her personal belongings, consisting of her clothing, jewelry, pictures, and silver. July 16, 1949, she rented a furnished room in a rooming house, on which she continued to pay rent until November 16, 1949. Shortly after her arrival, she consulted a lawyer about obtaining a divorce from her husband. She filed suit for divorce August 29, 1949. Substituted service was obtained on the husband September 14th. September 15th, she returned to visit her niece in Rochester, her sister on Whidby Island, and Mr. Englund in Port Angeles. October

5th or 6th, she and Mr. Englund went back to Coeur d'Alene, where they stayed at a hotel. The divorce hearing was on October 7th, and the decree was entered that day. After the divorce they returned to Port Angeles. October 28th, she quitclaimed all of her property to Mr. Tashos.

November 5th or 6th, she and Englund again went to Coeur d'Alene, where they were married November 7th. Both the marriage license and the marriage certificate gave her address as Olympia, Thurston county, Washington. After the marriage, they returned to Port Angeles, where they resided until Mr. Englund's death. At the trial, Mrs. Englund testified that it was the intention of her and Mr. Englund to reside permanently in Idaho; that she did not start divorce proceedings here because she wanted to get entirely away from the state of Washington and to start over anew in Idaho. Two days after first arriving in Idaho, she wrote her husband advising him that she was going to marry Mr. Englund and that they were going to live over there. August 25th, shortly before the complaint was filed, she wrote a friend that she and Englund were going to settle there.

The trial court found that Mrs. Englund was not domiciled in the state of Idaho at any time during the divorce proceedings. We are unable to say that the evidence preponderates against such finding. Judgment was entered removing Pearl Englund as administratrix, and this appeal follows.

Appellant claims the following assignments of error:

"1. The court erred in allowing respondent to attack the validity of the marriage of appellant and deceased after the death of one of the parties to the marriage.

"2. The court erred in allowing the respondent to collaterally attack the divorce of appellant and Chris Tashos.

"3. The court erred in entering that part of Finding of Fact No. III as follows:

"'. . . that the said Pearl Englund at the time of such appointment was not and never had been the wife or the widow of the deceased, Alfred Englund, for the reason that the divorce which the said Pearl Englund obtained from her prior husband, Chris Tashos, in Kootenai County, Idaho

was not a valid or legal divorce, and that the said Pearl Englund at the time she entered into a marriage ceremony with the said Alfred Englund was then the wife of the said Chris Tashos.'

"4. The court erred in entering Finding of Fact No. V as follows:

" 'The court further finds that the said Pearl Tashos, now Pearl Englund, was the wife of Chris Tashos at the time she married the above named decedent; that the said Pearl Englund is not the widow of the deceased, having never been lawfully or legally married to him; and that neither the said Pearl Tashos nor her husband Chris Tashos were domiciled in the State of Idaho at any time during such divorce proceedings or thereafter.'

"5. The court erred in entering judgment removing appellant, Pearl Englund, as administratrix."

■■ The law is settled in this jurisdiction that a divorce decree obtained in a foreign state by a resident of this state may be attacked collaterally in the courts of this state, and it may be declared void for the reason that the foreign court did not have jurisdiction to enter such decree. *Wampler v. Wampler,* 25 Wn. (2d) 258, 170 P. (2d) 316; *Maple v. Maple,* 29 Wn. (2d) 858, 189 P. (2d) 976. The law is also settled in this jurisdiction that a subsequent marriage to another person by a party to a void divorce is not voidable, but absolutely void *ab initio,* for the reason that such party had a wife or husband living at the time of the marriage. *Beyerle v. Bartsch,* 111 Wash. 287, 190 Pac. 239; *Barker v. Barker,* 31 Wn. (2d) 506, 197 P. (2d) 439.

Before it can be said that the marriage between Alfred and Pearl Englund was void, there must be a determination that the Idaho divorce which she obtained from Chris Tashos was void. Should respondent, for herself and other collateral heirs, strangers to the divorce, be permitted to attack it? The precise question is a matter of first impression in this state. In an exhaustive annotation in 12 A. L. R. (2d), commencing at page 717, entitled, "Standing of strangers to divorce proceeding to attack validity of divorce decree", the annotator points out that there is a hopeless lack of unanimity among the various jurisdictions on this question. He defines the term, "stranger":

"The term 'stranger' as used in this annotation means any person who is neither a party to the record of the divorce proceedings nor in privity with such a party."

*Crockett v. Crockett,* 27 Wn. (2d) 877, 181 P. (2d) 180, was an action instituted in Whitman county, Washington, by Franklin Crockett, as administrator of the estate of his mother, Fannie Crockett, deceased, against his father, Miles S. Crockett. He alleged that a final decree of divorce obtained by his father in Whitman county should be set aside because of fraud, and that he be decreed to be the owner of one half of the property belonging to the parties at the time of the divorce. There was no question in that case involving jurisdiction, or of a void decree of divorce. However, the question did arise as to whether or not the plaintiff, being a stranger to the divorce decree, was entitled to bring the action. We held that he could not. We discussed our prior decisions, commencing with *Dwyer v. Nolan,* 40 Wash. 459, 82 Pac. 746, and including *McPherson v. McPherson,* 200 Wash. 365, 93 P. (2d) 428. We said:

"In the instant case, neither appellant nor any other person had an interest in the subject matter of the divorce action or the property therein involved, either at the time the divorce proceeding was started or at the time the interlocutory or final decree of divorce was entered. The subject of the controversy having been eliminated by the death of Fannie Crockett, appellant, as her personal representative, would have no authority to move in the original action to vacate the decree, nor would he have any authority in this action to attack such decree, either on the theory that he represented the deceased, or on behalf of her heirs."

In the *McPherson* case, we stated that this court was without authority to reverse, modify, or affirm an interlocutory decree of divorce after the death of one of the parties to such decree, except where the rights of third parties were involved in the decree itself, and then only for the purpose of adjudicating the rights of such third parties.

The rule is stated in 1 Freeman on Judgments 636 (5th ed.), § 319:

"It must not, however, be understood that all strangers are entitled to impeach a judgment. It is only those strangers

who, if the judgment were given full credit and effect, would be prejudiced in regard to some pre-existing right, that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause nor appeal from the judgment, they are by law allowed to impeach it whenever it is attempted to be enforced against them so as to affect rights or interests acquired prior to its rendition."

Respondent calls our attention to § 20, chapter 215, Laws of 1949, p. 704 (RCW 26.08.200):

"A divorce obtained in another jurisdiction shall be of no force or effect in this state if both parties to the marriage were domiciled in this state at the time the proceeding for divorce was commenced."

The above section is a part of the uniform divorce recognition act drafted by the commission on uniform laws. It states no new law in this jurisdiction. We have already held that, in a proper proceeding, a divorce obtained in another state by a resident of this state can be held to be void for the reason that the courts of the other state did not have jurisdiction over the person obtaining the questioned decree. But we cannot agree that, because § 20 states that such a divorce shall be of "no force or effect," such statement should be interpreted to mean that anyone would have a right to attack such decree.

In *Dietrich v. Dietrich,* 41 Cal. (2d) 497, 261 P. (2d) 269, Carol Dietrich sued her husband, Noah Dietrich, for separate maintenance. Noah cross-complained, seeking either an annulment or a divorce, claiming that there was no valid marriage because Carol had obtained an invalid divorce in Nevada while she and her former husband were both residents of California. The court held that Noah was estopped to assert the invalidity of the divorce because he knew all of the circumstances surrounding it and married her in reliance thereon. The court stated:

"Noah urges that the public policy applicable here is stated in section 150.1 of the Civil Code, which provides that 'A divorce obtained in another jurisdiction shall be of no force or effect in this State, if both parties to the marriage were domiciled in this State at the time the proceeding for the divorce was commenced.' But we are not considering

the 'force or effect' of the Nevada decree except as such consideration is necessarily incident to the holding that Noah, because of his conduct with relation to that decree, has no standing to question it."

. See, also, *Union Bank & Trust Co. v. Gordon,* 116 Cal. App. (2d) 681, 254 P. (2d) 644, an action between the first and second spouses of Leo Gordon, deceased, for his property. The court there stated:

"The section prohibits the giving of force or effect to the divorce. In holding that a spouse is estopped from asserting that a decree of divorce is invalid a court does not give any force or effect to the decree. It assumes the decree is invalid and of no force or effect. It merely says that because of the particular circumstances the spouse is precluded from asserting its invalidity."

However, respondent contends that, by adopting § 20, the legislature did solemnly declare the public policy of this state with relation to foreign divorces obtained if both parties were domiciled in this state.

It is questionable whether the legislature intended to extend its declaration of public policy to situations which would result in bigamous marriages and illegitimate children, the result of such marriages. In *Rediker v. Rediker,* 35 Cal. (2d) 796, 221 P. (2d) 1, the court quoted with approval from *Goodloe v. Hawk,* 72 App. D. C. 287, 113 F. (2d) 753:

"It can no longer be said that public policy requires non-recognition of all irregular foreign divorces. We have recognized that the interest of the state in many situations may lie with recognition of such divorces and preservation of remarriages rather than a dubious attempt to resurrect the original."

Furthermore, the public is interested only in the sanctity and retention of the *marital status* and not in property rights. In *In re Romanski's Estate,* 354 Pa. 261, 47 A. (2d) 233, the court held that in a case termed a "matrimonial action," the commonwealth was an interested party because of its concern with the marital status of its citizens, but that where the litigation related solely to marital property rights the commonwealth was not regarded as an interested party.

In *In re Tamke's Estate,* 32 Wn. (2d) 927, 204 P. (2d) 526, we held that, although generally a party to a divorce action may not impeach a decree which he himself has procured, we recognize an exception to the rule in an action concerning the adjudication of the marital status as between the parties to a claimed foreign divorce decree; that in such an action the one procuring such a decree is not estopped from asserting its invalidity. We held, however, that the courts intend the above exception to the rule to be applicable in cases in which the main issue is the continuance or dissolution of a marital relationship, and not to be applicable in cases brought to obtain a private claim or demand, including a claim of right to administer an estate. We further held that, even though a foreign decree obtained by a wife is invalid in another state as an independent proposition, its invalidity may not be raised in this state by the wife in a proceeding to be appointed administratrix of the deceased husband's estate.

██ In enacting § 20, chapter 215, Laws of 1949 (RCW 26.08.200), the public was concerned only with the question of the marital status of its citizens and was not concerned with property rights. It is pointed out in the commissioner's note to the uniform act that this section was inserted for the purpose of discouraging "tourist divorces." It is the public policy of this state that, in an action commenced for the purpose of determining marital status alone, that is, the continuance or dissolution of a marital relationship, a divorce obtained in another jurisdiction if both parties to the marriage were domiciled in this state at the time the proceeding for divorce was commenced may be attacked, unless the person asserting its invalidity is precluded, because of certain particular circumstances, from so doing. On the other hand, public policy is not concerned with, and does not extend to, a situation where an action is commenced for the purpose of determining private property rights. In such an action, a stranger to the decree has no standing to attack it, unless such decree affected some right or interest which he had acquired prior to its rendition.

■ In the instant case, neither of the parties to the Idaho divorce is objecting to the decree. Ida Dahlberg, a sister of Alfred Englund, deceased (the second husband of appellant), is pressing this action on behalf of herself and other collateral heirs of Englund. They were strangers to the divorce proceedings and were not in privity with either of the parties thereto. The divorce decree did not affect any rights or interests which they had acquired prior to its rendition. Respondent, therefore, did not have any right to attack it.

In view of the above, we will not consider assignments of error Nos. 3 and 4.

The judgment is reversed.

GRADY, C. J., MALLERY, FINLEY, and OLSON, JJ., concur.

HILL, J. (dissenting)—As the majority says, the question that we are called upon to decide is one of first impression in this state.

I freely concede that the respondents, the heirs at law of the estate of Alfred Englund, were strangers to the divorce proceeding between the appellant and Chris Tashos, and that the divorce proceeding and decree did not affect any rights or interest which the respondents had acquired prior to the rendition of that decree. In fact, they could have had no concern in the affairs of the appellant and Mr. Tashos or any right or cause to attack their divorce proceeding until appellant claimed that, having been the wife of Alfred Englund, she as his widow had a prior right to administer his estate.

The respondents attack the validity of appellant's marriage to Alfred Englund. In my opinion, they have a right so to do. The rule as stated in 35 Am. Jur. 221, Marriage, § 58, is:

"The voidance of a marriage can be maintained in any proceeding in which the fact of marriage may be material, either directly or collaterally, in any court and between any parties at any time, whether before or after the death of either or both the husband and wife; upon mere proof of the facts

rendering such marriage void, it will be disregarded or treated as nonexistent by the court."

In our recent case, *In re Romano's Estate,* 40 Wn. (2d) 796, 805, 246 P. (2d) 501 (1952), it is stated:

"It has always been recognized at the common law that the invalidity of void marriages could be maintained in any proceeding, either direct or collateral, before or after the death of the parties."

We have a statute which states:

"A divorce obtained in another jurisdiction shall be of no force or effect in this state if both parties to the marriage were domiciled in this state at the time the proceeding for divorce was commenced." Laws of 1949, chapter 215, § 20, p. 704 (RCW 26.08.200).

This statute is an expression of public policy. Its wisdom may be debatable (see 24 Wash. L. Rev. 259), but its intent seems unmistakable. It is part of the uniform divorce recognition act, and no plainer language could have been devised by the commission on uniform laws to accomplish its avowed purpose. See the commissioners' notes with reference to this particular section, 9 U. L. A. 364 *et seq.* It is there stated (p. 365):

"The Act has been framed upon the theory that it is desirable to discourage rather than to encourage migration in pursuit of a divorce; that specific statutory refusal to recognize extrastate divorces obtained by domiciliaries of the state enacting the statute will reduce tourist divorce-seeking, particularly as the perils of that practice become generally recognized; and that recognition to extrastate divorces obtained by domiciliaries should be refused except as specifically required by the Constitution of the United States, since any narrower policy both would be difficult to formulate and would introduce factors so complex as to endanger the goal of uniformity."

In *Ainscow v. Alexander,* 28 Del. Ch. 545, 561, 39 A. (2d) 54 (1944), it is said:

"Whether legal restrictions on human desires imposed by traditional religious and social creeds are wise, whether the enlarged and pragmatical view held by some with respect to facile dissolution of the marriage tie requires a greater

tolerance of foreign decrees of divorce obtained by domiciliaries of this State, are matters within the competency of the legislature to determine; and where the legislature has seen fit to declare a strict public policy in this regard, *it is not within the power of the court to whittle it away by decision.*" (Italics mine.)

The majority opinion demonstrates that we in Washington are better whittlers.

No citation of authority is needed to establish that a bigamous marriage is void *ab initio.* Had there been no divorce proceeding between appellant and Mr. Tashos, the respondents would merely have had to prove the appellant's marriage to Mr. Tashos in order to establish that her marriage to Englund was void. However, appellant urged that she had an Idaho decree of divorce from Mr. Tashos. An attack upon her Idaho divorce proceeding and decree was therefore incidental but necessary to the attack upon the validity of her marriage to Alfred Englund.

The question presented was: Can the validity of a divorce decree be attacked by a person whose property rights are affected *not by the divorce decree but by the subsequent marriage of one of the parties to that decree* who claims, in consequence thereof, to be capable of entering into a valid marriage?

The trial court, assuming that the legislature meant what it said in § 20 of chapter 215, Laws of 1949, quoted *supra,* permitted an attack upon the validity of the Idaho decree and having found on what seems to me practically conclusive evidence that neither the appellant nor her husband, Chris Tashos, was domiciled in Idaho at any time during the divorce proceeding, concluded that there was no valid divorce and that, consequently, appellant's subsequent marriage to Alfred Englund was void and she had no right to be administratrix of his estate. Accordingly, the court removed her as administratrix.

I find no exception in the statutes or in public policy which would bar the respondents from proving that the appellant and her husband, Chris Tashos, were domiciled in

this state at the time she commenced her proceedings for a divorce in Idaho.

The majority holds that the attack upon the validity of the Idaho divorce decree should not have been permitted because the decree did not affect any rights or interests which the respondents had acquired prior to its rendition. The majority relies upon the case of *Crockett v. Crockett,* 27 Wn. (2d) 877, 181 P. (2d) 180 (1947). There the divorce under attack was *only voidable* and the language used was directed at the point that, the divorce decree being only voidable, the death of the party having the sole right to challenge it ended further inquiry.

There is a South Carolina case squarely in point, *Nimmer's Estate v. Nimmer,* 212 S. C. 311, 47 S. E. (2d) 716 (1948). There, as here, the widow claimed a preferred right to administer the decedent's estate, which preferred right was, as here, challenged by his heirs at law, who alleged that the supposed widow had a living husband from whom she had not obtained a valid divorce. The court of common pleas (York county) permitted an attack upon the validity of the Georgia divorce upon which she relied, and upheld the contention of the heirs at law that the Georgia court had acquired no jurisdiction. The widow appealed, asserting, as appellant does here, that the heirs at law of the decedent were not parties to the divorce proceeding, were not in privity with any person who was a party thereto, and could not collaterally attack it. The South Carolina supreme court held that the heirs could attack the validity of the Georgia decree upon jurisdictional grounds and that, by their evidence, they had established that the decree was void because neither of the parties to the divorce proceeding had ever been a resident of the state of Georgia. In my opinion, the South Carolina court reached the correct conclusion.

The cases of *Dietrich v. Dietrich,* 41 Cal. (2d) 497, 261 P. (2d) 269; *Union Bank & Trust Co. v. Gordon,* 116 Cal. App. (2d) 681, 254 P. (2d) 644; and *In re Romanski's Estate,* 354 Pa. 261, 47 A. (2d) 233, are cited by the majority. It is

universally recognized that a litigant, by his own conduct, can estop himself from invoking a statute such as the one with which we are here concerned. These three cases are estoppel cases and, as such, are beside the point with which we are here concerned.

The majority seems to make a point of the fact that appellant and Mr. Tashos are both alive and neither of them is attacking the validity of the Idaho divorce. The fact that they have perpetrated a fraud on the Idaho court and are apparently satisfied with the result seems to me no justification for holding valid what the evidence shows to have been a bigamous marriage. The really significant point with reference to the fact that both appellant and Mr. Tashos are alive and satisfied with the decree is that if either of them was domiciled in the state of Idaho when the divorce proceeding was commenced, appellant should have had no difficulty in so proving; death had silenced no party to the transaction.

In view of the plain language of our statute, I would affirm the trial court and leave the whittling to the legislature.

HAMLEY, DONWORTH, and WEAVER, JJ., concur with HILL, J.

---

February 8, 1955. Petition for rehearing denied.