16075

EX PARTE NIMMER

NIMMER'S ESTATE v. NIMMER

(47 S. E. (2d) 716)

312

*Messrs. Hart & Moss,* of York, and *DuRant, DuRant & Plowden,* of Manning, for Appellant,

*Mr. S. E. Rogers,* of Summerton, for Respondent,

May 5, 1948.

OXNER, Justice.

William A. Nimmer, while a resident of York County, died intestate on June 7, 1946, leaving a personal estate valued at $10,725.00. On July, 16, 1946, his father, A. Nimmer, respondent on this appeal, filed a petition in the Probate Court of York County in which he alleged that the sole heirs at law of William A. Nimmer were his father and mother and brothers and sisters and asked that he be ap-

pointed administrator of the estate. On July 23, 1946, Doris G. Nimmer filed a petition asserting that she was the widow of William A. Nimmer and had a perferred right to letters of administration. A. Nimmer filed a reply denying that Doris G. Nimmer was the widow of the decedent and alleged that at the time of her marriage to him she had a living husband from whom she had not obtained a valid divorce. A hearing was had before the Probate Judge on October 15, 1946, at which considerable testimony was taken relating to the validity of the purported divorce which Doris G. Nimmer procured from her first husband. An order of the Probate Judge was filed on November 12, 1946, in which he held that Doris G. Nimmer was the widow of the decedent and appointed her as administratrix of his estate. A. Nimmer appealed to the Court of Common Pleas where on July 30, 1947, an order was filed reversing the order of the Probate Court and adjudging that Doris G. Nimmer was not the widow of the deceased and was therefore not entitled to administer upon his estate. Doris G. Nimmer has appealed from this order.

Appellant and Edward Reedy Davis, both of whom lived in the town of Summerton, Clarendon County, were married at Manning, South Carolina, on June 8, 1940. In May, 1944, while her husband was in the Army, appellant left Summerton and secured work at the Charleston Navy Yard under her maiden name of A. Doris Griffin, giving her address as 5 Ladson Street, Charleston, South Carolina. In July she commenced going with the decedent, William A. Nimmer. During the month of August she discontinued her work at the Navy Yard and moved to Summerville, South Carolina, where she lived at the Holly Inn which decedent operated. During the latter part of July or the early part of August, she and the decedent consulted an attorney at Charleston with reference to securing a divorce from her husband, the decedent stating that he would be responsible for the fee. This attorney referred the matter to an attorney

in Augusta, Georgia. On December 27, 1944, while appellant continued to reside at Summerville, her attorney filed a petition for divorce against her husband, Edward Reedy Davis, in the Superior Court of Richmond County, Georgia, in which she alleged that she had been a resident of that county and state for more than twelve months prior to the filing of the suit. Service was made by publication and process mailed to Edward Reedy Davis at Summerton, S. C. although at that time he was still in the Army. On March 23, 1945, after two concurring verdicts favoring a total divorce had been rendered by the jury, a decree was filed by the Georgia Court granting a total divorce and giving each party the right to remarry. In April, 1945, appellant and decedent unsuccessfully sought the services of a minister at Summerville to marry them. They then went to the town of St. George in the same county where on April 7th a minister married them. Shortly thereafter they moved to Rock Hill, South Carolina, where they continued to reside as man and wife until Nimmer's death on June 7, 1946. We may further state that at the time the decedent commenced going with appellant he was also married but was living separate and apart from his wife, who is not a party to this proceeding and so far as the record discloses makes no claim as his widow. There is some testimony indicating that decedent and his first wife were subsequently divorced.

If appellant was the lawful wife of William A. Nimmer, she would have a prior right to administer his estate (Section 8968, Code of 1942) ; if he left no wife surviving, his father could have been properly appointed as administrator. (It is conceded that he had no children.) The question as to whether appellant became decedent's wife by the marriage on April 7, 1945, depends upon the validity of the Georgia divorce granted to appellant on March 23, 1945. The statute law of Georgia, section 30-107 of the Code, provides: "No Court shall grant a divorce of any character to any person who has not been a bona fide resi-

dent of the State 12 months before the filing of the application for divorce * * *." This requirement as to residence has been construed by the Georgia Courts as an essential jurisdictional averment in every application for divorce. *Mullally v. Mullally*, 199 Ga. 708, 35 S. E. (2d) 199.

Our first inquiry then is whether either of the parties to the Georgia divorce proceeding was a resident of that state for a period of twelve months before the filing of the application for divorce. There is no contention that Edward Reedy Davis was ever a resident of Georgia. Apart from the record of the Georgia divorce proceedings, there is no evidence whatsoever tending to show that appellant was ever a resident of Georgia. The facts heretofore stated were taken from the verbal testimony offered by respondent and these facts were not denied or contradicted by any testimony offered by appellant. Included in the record mentioned, which respondent offered in evidence, was an unverified petition for divorce, signed by appellant's attorney, which contained an allegation that appellant (plaintiff in that proceeding) had been a resident of Richmond County, Georgia, for more than twelve months before the filing of the suit. Very probably this petition was introduced merely to show when the application for divorce was made. However, the record was offered, perhaps inadvertently, without qualification or restriction. At the hearing before the Probate Judge, appellant objected to all evidence tending to show that she was never a resident of Georgia upon the ground that it contradicted the allegation contained in this petition. Appellant contends that since this petition was introduced in evidence by respondent without reservation, he is bound by the allegation mentioned and in support of this position relies upon the case of *Greenville County v. Stover*, 198 S. C. 240, 17 S. E. (2d) 535. That case is not apposite. There the record was the only evidence before the Court on the factual issue for determination. Here there was abundant other testimony showing that appellant was not a resident

of Georgia during the period in question. Appellant occupies no better position than she would if respondent had offered a witness who had testified to the facts contained in this allegation. "The rule upon this subject is, that a party cannot discredit his own witness by impeaching his general character, or by proving that he has made statements inconsistent with those made by him while on the stand as a witness, but a party may introduce witnesses to prove that the fact is not as one of his witnesses may have testified, even although this may indirectly have the effect of bringing in question the credit of such witness." *State ex relatione Detheridge v. Gilreath,* 16 S. C. 100. "While a party who calls his adversary as a witness makes him his witness to the same extent that he makes any other person whom he calls as a witness, still he is no more concluded by the testimony of his adversary than he would be by the testimony of any other witness whom he might call. But just as in the case of any other witness, having called him, he may not impeach him or contradict him; but he may prove the facts to be otherwise than as he testifies them to be." *Benbow et al. v. Harvin,* 92 S. C. 180, 75 S. E. 414, 417. To the same effect are the later cases of *State v. Nelson,* 192 S. C. 422, 7 S. E. (2d) 72, and *White v. Southern Oil Stores, Inc.,* 198 S. C. 173, 17 S. E. (2d) 150.

Under these authorities the introduction of the divorce record did not preclude respondent from proving the facts to be otherwise than alleged in the application for divorce. We think the conclusion is inescapable that appellant was never a resident of Georgia during any portion of the twelve month period preceding the filing of her application for divorce and that the Georgia Court was without jurisdiction to entertain the proceeding. Jurisdiction to grant a divorce rests on domicile and a domicile by one of the parties in the state in which the divorce was granted is essential to jurisdiction. It has always been regarded as competent for the courts of one state to inquire

into the validity of a divorce granted in another state so far, at least, as its validity depends upon the jurisdiction of the court granting it. *State v. Westmoreland,* 76 S. C. 145, 56 S. E. 673, 8 L. R. A., N. S., 842; *Everly v. Baumil,* 209 S. C. 287, 39 S. E. (2d) 905.

Appellant asserts that respondent and the other heirs at law of the decedent were not parties to the Georgia divorce proceedings and are not in privity with any person who was a party to said action, and as strangers will not be allowed to collaterally attack the judgment of the Georgia Court in this proceeding. While some support is found for this contention among the authorities, we think the better rule is that where the attack is upon the ground that the court lacked jurisdiction, it may be made at the instance of any interested party. See annotation in 99 A. L. R., beginning on page 1309, where the following statement will be found on page 1316: "It is generally held and recognized that a stranger may collaterally attack a decree of divorce for want of jurisdiction in the court entering it, where his property rights are injuriously affected thereby."

The remaining question for determination is appellant's contention that the decedent aided and abetted her in securing the divorce from her first husband and for this reason the respondent and his other heirs at law, being in privity with the decedent, are estopped to contest the validity of the Georgia divorce, as the deceased intestate himself would have been estopped. This contention was upheld by the Probate Judge but was not sustained by the Circuit Court.

While some courts regard a decree of divorce by a court without jurisdiction as a nullity, a majority hold that a spouse who procures such a decree will not be permitted to impeach it where only property rights arising out of the marriage are involved. The bases for such decisions are varied. Most of them are supported on the ground of estoppel or *quasi*-estoppel and some upon the

grounds that no one can profit from his or her wrong and that a complainant must come into equity with "clean hands". See annotation in 153 A. L. R., page 941, which supplements the following earlier A. L. R. annotations: 140 p. 914; 122 p. 1321; and 109 p. 1018. Many courts hold that the foregoing equitable principles should not be applied to cases where the public interest is affected by the controversy, such as suits to annul or set aside a void marriage in which the state is an interested party. In such cases the court is called upon to pronounce judgment directly upon the marital status—a relationship which it is said no stipulation or conduct of the parties could alter. In other words, the general rule that where the parties are in *pari delicto* no affirmative relief will be given to one as against the other is regarded by courts of equity in most jurisdictions as without controlling force in all cases in which public policy is considered as advanced by allowing either party to sue for relief against the transaction. Under such circumstances it is said that the interest of the state transcends the personal rights and interests of either party to a wrong.

The foregoing views find general recognition in the decisions of this state which we shall now briefly review.

*Hughey v. Ray,* 207 S. C. 374, 36 S. E. (2d) 33, was an action in which the plaintiff sought an adjudication that the marriage between him and the defendant was void on the ground that at the time of the marriage the defendant had a living husband by a pre-existing marriage. It was alleged that the defendant had procured a divorce in Georgia from her first husband which was null and void because neither party to the proceeding was a resident of Georgia at the time of the application for divorce. One of the defenses interposed by the defendant was that the Georgia divorce proceeding was instituted by her at the instance and upon the counsel and advice of the plaintiff who, with full knowledge of the facts surrounding the granting of said divorce, subsequently married and cohabited with her. Defendant asserted that

under these circumstances plaintiff was estopped from attacking the validity of the Georgia decree. The Court held that a marriage otherwise invalid because of the invalidity of the divorce obtained by one of the parties from a former spouse still living could not be sustained because of the action of one of the parties in inducing the other to obtain the divorce and then marrying the divorcee and cohabiting with her.

It will be observed that in the case just mentioned an adjudication was sought upon the question of the existing marital status. In this kind of case "the state is a silent but not by any means an inactive third party." *Fogel v. McDonald,* 159 S. C. 506, 157 S. E. 830, 833. The case before us is not a matrimonial action and therefore the *Hughey case* does not settle the question we are called upon to determine.

We now turn to a class of cases which involve solely private claims or demands arising out of the marital relation. In *Scheper et al. v. Scheper et al.,* 125 S. C. 89, 118 S. E. 178, it was held that a husband who left his wife and went to another state where he secured a divorce from her would thereafter be estopped to assert the invalidity of such divorce in an action wherein he sought to claim as a widower a distributive share in the estate of his first wife, who died after he had divorced her and remarried. To the same effect is *Way v. Way et al.,* 132 S. C. 288, 128 S. E. 705. In *Watson et al. v. Watson et al.,* 172 S. C. 362, 174 S. E. 33, one James A. Watson separated from his wife and, after making a property settlement with her, went to Nevada where he secured a divorce. He then returned to South Carolina and induced another to marry him upon the representation that he had a valid divorce and a legal right to remarry. After living with the second wife for about five years, Watson died. His second wife claimed dower which was resisted by the children of the first marriage upon the ground that Watson was never legally divorced from his

first wife. It was held that Watson, if living, would be estopped to question the validity of that divorce and that. his children, being in privity with him, were likewise estopped.

Appellant claims that the cases just reviewed sustain her position on the question of estoppel. We do not think so. In each of these cases estoppel was applied in favor of one who was blameless and against the person procuring the foreign divorce or his estate. The problem confronting us presents a different situation. Appellant was the one who obtained the void Georgia decree.

It is said, however, that the decedent advised appellant to obtain the Georgia divorce so that he could marry her and assisted, aided and actively participated in its procurement and that his heirs at law are in privity with him and should not be permitted to avoid the consequences of his own connivance. If this is true, we have a situation where there are no innocent parties. All are in *pari delicto*. On the one hand there is appellant who chose to flout the law and on the other hand the collateral heirs of decedent who participated in the fraud practiced upon the Georgia Court. Whether appellant and decedent intentionally deceived the Georgia Court or did so through ignorance or misinformation is immaterial. In either case they were the authors of the Court's error. Both must be charged with misleading the Georgia Court. They sought to evade the fundamental law of this State which prohibits a divorce and selected a jurisdiction which was thought to afford the easiest and speediest escape from appellant's bonds of matrimony. Appellant was not deceived or misled by the decedent. Both had equal knowledge of all the circumstances. The essential elements of ordinary estoppel are lacking. To prevent an adjudication that she is not the lawful widow of decedent, appellant invokes the equitable principle of estoppel. Under the well settled maxims of equity jurisprudence, she will not be permitted to do so because she does not come into court with clean hands and seeks to benefit by her own wrong. It is appellant who is asserting

a right which could only arise from a valid marriage to decedent. To sustain its validity necessitates recognizing a void Georgia divorce and thereby extending to appellant an immunity from her culpable conduct, No good reason appears why she should be relieved of her transgression and allowed to enjoy the fruits of a marriage which is obviously invalid.

The only cases cited in appellant's brief which can be fairly said to sustain her contention are the following two cases from other jurisdictions: *In re Davis' Estate,* 38 Cal. App. (2d) 579, 101 P. (2d) 761, 102 P. (2d) 545, decided by the District Court of Appeals for the State of California, and *in re Ainscow's Estate,* 34 A. (2d) 593, decided by the Orphans' Court of Delaware. In the first case mentioned, one Davis urged a married woman to go to Nevada and obtain a divorce so she could marry him. He promised to pay her expenses and the cost of the divorce and went along with her to Reno where he actively participated in the preparation of the case. On the day the divorce was granted he married her and the couple returned to California where they made their home. Davis thereafter died and a contest arose between Davis' son by a former marriage and his reputed widow over the right of the latter to share in the estate. The Court held that although the Nevada decree was void for want of domicile on the part of the plaintiff, the son was estopped from attacking its validity. In the other case mentioned the material facts were these: Allen H. Ainscow, a childless widower of Wilmington, Delaware, persuaded a Mrs. Alexander, who also lived in Delaware and had separated from her husband, to obtain a divorce and agreed to pay all expenses connected therewith. In accordance with the agreed plan, Mrs. Alexander went to Nevada, secured a divorce, and immediately returned to Delaware where within a week she married Ainscow. The couple made their home in Wilmington. About a year later Ainscow died intestate leaving an estate of approximately $30,000.00 for distribu-

tion among his heirs. It appears that under the laws of Delaware, a surviving widow takes the entire personal estate of her husband in the absence of children of the intestate or descendants of such children. Four years later and prior to the final settlement of Ainscow's estate, Mrs. Ainscow died intestate. A brother of Ainscow and other collateral heirs challenged the validity of the Nevada decree and the subsequent marriage of Ainscow and Mrs. Alexander on the ground that the Nevada decree had been procured by collusion and fraud and in defiance of a Delaware statute which provided that if any inhabitant of that state should go into another state in order to obtain a decree of divorce for a cause which occurred while the parties resided in Delaware, or for a cause which was not a ground for divorce in Delaware, the decree so obtained should be of no force or effect in that state. The children of Mrs. Ainscow by her first marriage asserted that the Nevada decree was valid and further contended that Ainscow during his lifetime could not have attacked the validity of the Nevada decree and his heirs, being in privity with him, were also estopped. The Court held that the Nevada divorce was invalid but that Ainscow's heirs were estopped to assert its nullity for the purpose of invalidating the marriage, as their intestate was an active participant in the fraud practiced on the Nevada Court. Accordingly it was held that Ainscow's personal estate should be distributed among the heirs of Mrs. Ainscow.

Both of the foregoing cases are almost on all fours with the instant case but the difficulty from appellant's standpoint is that the *Ainscow case* was subsequently reversed by the Superior Court of Delaware. *Ainscow et al. v. Alexander,* 39 A. (2d) 54. It was there held that Mrs. Ainscow was not deceived by any conduct of Ainscow and deliberately participated in the fraud practiced upon the Nevada Court. The Court concluded that the heirs of Ainscow were not estopped and were entitled to his estate. In discussing the California case mentioned, the Court said that the California

Court overlooked or ignored the participation in the fraud by the wife and declined to accept the California decision "as a satisfactory authority". The final decision in the *Ainscow case* by the Superior Court of Delaware seems to us well reasoned and clearly sustains the views heretofore expressed.

In conclusion, we wish to emphasize that our decision is confined to the precise facts before us. We are not confronted with the claim of a surviving wife who occupies an innocent position in connection with the foreign divorce sought to be attacked. There are no children of the marriage upon whom the imputation of illegitimacy may be cast. We leave untouched the question of the application of estoppel under circumstances other than those now presented.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.