*In re* MEIER ESTATE.

KIRBY *v.* MEIER.

1. JUDGMENT—COLLATERAL ATTACK BY OTHERS.
    Courts are instituted to give relief to parties whose rights have been invaded, and to give it at the instance of such parties; and a party whose rights have not been invaded cannot be heard to complain if the court refuses to act at his instance in righting wrongs of another who seeks no redress.

2. SAME—DIVORCE—COLLATERAL ATTACK.
    The sister of deceased woman who had married a man theretofore divorced in Ohio some 23 years previously *held,* not entitled to have Ohio divorce decree deemed invalid since the

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 30A Am Jur, Judgments § 849.
[2] 17 Am Jur, Divorce and Separation §§ 525–542.

sister was not a party to such divorce proceeding, the alleged defect was a minor irregularity, the Ohio defendant (wife) is estopped from attacking that decree, and plaintiff's aim herein is to obtain a larger share of her sister's estate through invalidation of a marriage presumed valid by the parties and to resurrect a marriage presumed and desired dissolved by the parties thereto.

SMITH, J., dissenting.

Appeal from Shiawassee; Carland (Michael), J. Submitted October 9, 1962. (Calendar No. 84, Docket No. 49,731.) Decided October 10, 1963. Rehearing denied November 7, 1963.

In the matter of the estate of Elizabeth Julia Meier, deceased, plaintiff Nellie Kirby, a surviving sister, petitioned for determination of heirs claiming defendant Henry W. Meier was not the legal husband of deceased because of a void decree in Ohio dissolving a previous marriage. Henry W. Meier determined in probate and circuit court as a legal heir. Plaintiff appeals. Affirmed.

*John W. Langs* (*Milo J. Warner* and *Thomas P. Dignan,* of counsel), for plaintiff.

*Burke, Burke, Ryan & Roberts* (*Robert Tait,* of counsel), for defendant.

SMITH, J. (*dissenting*). This case is submitted on an agreed statement of facts and issues. Involved are the questions: (1) Whether an Ohio decree of divorce is void, and (2) if so, whether it may be collaterally attacked in this State. This is an appeal from a circuit court order affirming a probate court order determining, among other things, the heirs of Elizabeth Julia Meier to be Henry W. Meier, husband, Nellie E. Kirby, a sister, and Jane White Hutchins, a niece.

Outcome of the case depends largely upon whether a 1932 Ohio divorce between Henry Meier and his

first wife, Jean Meier, was void for want of jurisdiction over the person of Jean Meier. If, according to Ohio law, the decree was void, then the purported marriage of Henry Meier to Elizabeth Meier in 1955 is invalid, and he is not an heir of the deceased.

In 1932, Henry Meier obtained the putative divorce from Jean Meier in Lima, Ohio. They had married in Michigan in 1911, gone to live in Ohio sometime thereafter, and separated in 1928. Jean Meier went to live in Utah. In the petition for divorce, Henry Meier alleged among other things that Jean Meier, "the defendant now resides in Salt Lake City, Utah." The petition also recited that "plaintiff prays for an order for service by publication on the defendant." These quoted portions constitute the entire reference in the petition to the whereabouts of Jean Meier and to the request for service by publication. No separate affidavit was filed. (The significance of this under Ohio law will be explained below.) However, the record shows an order by the judge in which he considered the petition as an affidavit and directed thereby service by publication, including mailing a copy of the petition and summons to Jean Meier at a given street address in Salt Lake City. There is no question about Jean Meier receiving notice of the proceeding. Jean Meier is alive, has returned to Michigan, and admits the fact of notice. She did not enter an appearance in the divorce proceedings, nor take part in any way. There is no claim of fraud or collusion by her or anyone else. The question is whether under Ohio law in effect at the time the statutory requisites were followed so as to have given the court jurisdiction over the person of Jean Meier.

The principal Ohio case cited and relied upon by appellant is *In re Estate of Frankenberg,* 70 Ohio App 495 (47 NE2d 239).* This, like the instant case,

---

* An intermediate appellate decision, but it is the law until changed by the Ohio supreme court. This has not occurred.

was a collateral attack in probate court upon a divorce proceeding occurring some 32 years earlier. Claim was made that the decree was void because of failure to obtain jurisdiction over the person of the defendant. In the *Frankenberg Case,* appellant contended that the decree was void on its face by reason of the failure to file an affidavit before service by publication, and further by reason of the failure of the late-filed affidavit not setting forth "that service of summons can not be made within this State on the defendant to be served by publication," as required by Ohio statute. The statutes in effect at the time of the *Frankenberg Case* are substantially the same as those in effect at the time of the divorce proceeding under attack in the instant case.

The language of the Ohio court in *Frankenberg* is important to a resolution of this case and is, therefore, quoted at some length (pp 497, 498):

"Section 5045, Revised Statues of Ohio (now section 11292, General Code*), in force at the time the petition in the divorce case was filed, provided for service by publication, but before service by publication could be made a preliminary affidavit was necessary as provided by section 5046, Revised Statutes (now section 11293, General Code*), in force at the time and reading as follows:

" 'Before service by publication can be made, an affidavit must be filed that service of a summons can not be made within this State on the defendant to be served by publication, and that the case is 1 of those mentioned in the preceding section; and when such affidavit is filed, the party may proceed to make service by publication.'

"It is said in 1 Bates, Pleading and Practice (1908 ed), 596, in commenting on the statutes in force and effect at the time of this divorce proceeding:

---

* See, currently, Page's Ohio Revised Code Annotated, §§ 2703.14, 2703.15.—Reporter.

" 'The code provides for 2 kinds of affidavits in this connection; the one under section 5046, which is a necessary part of the constructive service or at least an essential preliminary foundation; the other under section 5045 (last lines of section), which is mere evidence to show due service but not part of it; and hence is not called for until before hearing.

" '*The preliminary affidavit is as necessary to authorize personal service outside the State as for publishing. Publication without such affidavit is wholly void. The affidavit must be filed in advance of the publication, section 5046, and publishing before the affidavit is filed is a fatal defect.*' (Emphasis supplied.)

"Numerous cases both in Ohio and throughout other jurisdictions are cited, an examination of which show that they support the text."

Relative to the petition for divorce being used as an affidavit, as appellee contends for in the instant case, again the Ohio court speaks in the *Frankenberg Case* (p 501):

"The petition in the divorce proceeding under consideration cannot be used in lieu of the affidavit because there is no allegation therein meeting the requirement of section 5046, Revised Statutes."

In another part of the opinion on the same page, the Ohio court held further that: "The courts have uniformly held that this allegation is necessary. A party may be a nonresident of the State of Ohio and yet it may be possible to serve him with summons." The court held further (p 500) that in view of the defects in procedure "the attempted service by publication was not authorized and the court never acquired jurisdiction of the person of the defendant in this divorce case, and publication without such affidavit is wholly void."

A review of the language in the petition in the Meier divorce proceeding requires a conclusion that

under Ohio law there is no affidavit as required by the statutes. And further, if the petition for divorce is said to encompass such an affidavit, then the failure to allege therein that service could not be made upon the defendant within the State was a fatal defect.

In *Beachler* v. *Ford,* 77 Ohio App 41 (60 NE2d 330), it was held that although the affidavit recited that defendant resided in another State and that by reason thereof service of summons could not be made upon him, this was not a sufficient allegation within the meaning of the statute. In that case the court held:

"The mere fact that the defendant resided in Indiana would not preclude service being made upon him in Ohio, as the statutes of Ohio permit service of summons on nonresident defendant within the State and it is a matter of common knowledge that services of summons on nonresident defendants are frequently made within the State. *Consequently the recital mentioned is not equivalent to an averment that service of summons cannot be made within this State on the defendant sought to be served, as required by statute.* (Emphasis supplied.)

"As the provisions of the statute were not complied with, the service by publication attempted to be made was, under the authorities mentioned, void and the court did not acquire jurisdiction over the defendant."

In view of the Ohio statutes as construed by the Ohio courts, it is clear that the decree of divorce in the instant proceeding is void. See, also, *In re Estate of Lombard,* 44 Ohio Opinions 357 (97 NE2d 87).

This brings us to the second question of whether or not under the Michigan law the void decree may be attacked collaterally in a probate court in Michigan. It is a general rule that where there is lack of

jurisdiction over the parties of the subject matter a judgment or decree is void for want of jurisdiction and may be attacked collaterally. *Jackson City Bank & Trust Co.* v. *Fredrick,* 271 Mich 538; *Fox* v. *Martin,* 287 Mich 147. We have distinguished a voidable decree from one which is void. A voidable decree is not subject to collateral attack; a void decree has no such immunity. *Morris* v. *Barker,* 253 Mich 334. See 14 MLP Judgment, §§ 151, 152, p 597.

The order should be reversed and the case should be remanded for entry of an order consistent with this opinion. Costs to appellants.

Kelly, J. In December, 1928, Jean A. Meier (defendant's first wife) employed counsel and entered into a property settlement agreement with defendant, such agreement containing a provision for the support of the children of the parties, and took the first step toward terminating the marital relationship by leaving defendant and moving to Utah.

Three years after her departure defendant filed his sworn petition for divorce (March 30, 1932) making known to the court in said petition Jean A. Meier's Utah address and praying for service by publication.

Considering the sworn petition as an affidavit, the Court entered the following order:

"This 30th day of March, 1932, this cause came on to be heard on the petition of the plaintiff used as an affidavit, and it appears to the satisfaction of the court that service by publication should be ordered made on the defendant.

"Wherefore, it is considered and ordered by the court that service by publication be made on the defendant; and further ordered that a summons and copy of the petition be deposited in the post office directed to the defendant: Mrs. Jean A. Meier, 49 South Nine East street, Salt Lake City, Utah, her place of residence."

The court's order was carried out, as is disclosed by the affidavit of Jean A. Meier (exhibit 1) stating that on or about April 1, 1932, she received by mail from the clerk of the common pleas court of Allen county, Ohio, a summons, a copy of the petition for divorce, and a marked copy of the Lima Star containing a legal notice that action had been filed against her praying for divorce, and said affidavit concludes with the following paragraph:

"Affiant further says that by reason of having been served with summons and having been furnished with a copy of the petition and a marked copy of the Lima Star containing the legal notice addressed to her and by reason of correspondence with her husband and his attorney she had knowledge of the filing of the petitions for divorce against her that she did not intend to nor did she interpose any defense to the petition for divorce and that upon the granting of the divorce she was so notified and has since the granting of the divorce on the 14th day of May, 1932, conducted herself as an unmarried person pursuant to the decree of the court of common pleas of Allen county, Ohio, wherein the marriage contract between Henry W. Meier and this affiant was dissolved and each party was released from the obligation."

No one challenged defendant's 1932 divorce from Jean A. Meier, or his subsequent marriage on January 1, 1955, to Elizabeth Julia Lewis (also known as Bessie) until approximately 3 months after Bessie's death, when her sister, plaintiff Nellie Kirby, filed her petition in the probate court to determine heirs, alleging:

"That one Henry W. Meier has represented to this court that he is the surviving husband of said Elizabeth Julia Meier, deceased, which representation is hereby challenged as erroneous and false, and should be disregarded and denied by this court in deter-

mining the lawful heirs of said Elizabeth Julia Meier, deceased. * * *

"That because no proper service was made on Jean A. Meier, the court of common pleas of Allen county, Ohio, did not acquire jurisdiction, that said divorce decree is null and void and of no force and effect in Ohio and that Henry W. Meier is still married to Jean A. Meier, who is still alive and has never re-married and now resides in Sterling, Michigan. * * *

"That since dual marriages are prohibited in Michigan by statute (CL 1948, § 551.5 [Stat Ann 1957 Rev § 25.5]) said Henry W. Meier did not have legal capacity to marry Elizabeth Julia Meier on or about January 1, 1955, in Byron, Michigan, although they went through the motions of a marriage cere-mony."

The probate court refused to agree with plaintiff's contention that her sister was never legally married to defendant or her contention that defendant "is still married to Jean A. Meier," and by its order provided:

"That the Ohio divorce decree of Henry W. Meier from Jean A. Meier, dated May 14, 1932, is valid and, therefore, that the said Elizabeth Julia Meier died a married woman on the 17th day of April, 1959, intestate, leaving as her legal heirs, Henry W. Meier, husband; Nellie E. Kirby, sister; and Jane White Hutchins, niece."

The Shiawassee county circuit court in a written opinion approving and affirming the probate court order stated:

"I am convinced that the Ohio court, under this state of facts, would not now hold this decree to be void as to either of the parties to such decree. * * *

"I therefore hold that there has been substantial compliance with the requirements of the statute. The purpose of the statute is to give notice. When

such notice is actually given, mere defects or irregularities should not be permitted to void a decree, especially when, as in the case at bar, 27 years have elapsed, and the plaintiff is innocent of all fraud or misconduct of any kind."

Extensive briefs containing numerous Ohio decisions have been submitted by both appellant and appellee in regard to plaintiff's claim that defendant is not the surviving husband of Elizabeth Julia Meier, deceased, and is still married to Jean A. Meier.

The Ohio court system is composed of: (1) supreme court; (2) court of appeals—10 judicial districts, each having a separate court of appeals consisting of 3 judges with the court of appeals sitting in the county seat of the various counties; (3) court of common pleas—1 court in each county; and (4) probate, juvenile, and municipal courts.

The principal case relied upon by appellant and cited and quoted in the opinion to which I dissent, namely, *In re Estate of Frankenberg,* 70 Ohio App 495 (47 NE2d 239), is not a decision of the Ohio supreme court but, rather, a decision of the court of appeals. This is likewise true in regard to the other cited case in the opinion, namely, *Beachler* v. *Ford,* 77 Ohio App 41 (60 NE2d 330).

Conceding for the sake of argument that the Ohio supreme court, if called upon to decide the unusual facts presented in this appeal, would follow the court of appeals' decision in *In re Estate of Frankenberg,* yet there would remain the all important question, namely: May plaintiff attack the 1932 divorce decree? This opinion is directed toward answering that question.

The trial court decided in the negative, stating:

"Surely after 27 years, and in view of these conceded facts, Jean A. Meier would not be permitted to attack the divorce decree here in question. She

would, I am sure, by reason of her conduct and acquiescence in the result of the divorce proceedings, be held to have estopped herself. * * *

"I have been unable to find any Michigan case directly in point, nor is any cited to me. However, I am convinced of the soundness of the rule which permits collateral attack upon a divorce decree *only* where an interest is affected, which exists at the time the decree is granted. Especially should this be so in regard to decrees of divorce. So many rights may intervene if this were not the rule that justice would be perverted. Here in the case at bar is an excellent example. To rule that the next of kin may now attack this Ohio decree would be to penalize an innocent party. Here neither Jean Meier nor her heirs could attack the decree because of the many years of acquiescence. Neither should a stranger be permitted to do so."

Appellant, in her brief to this Court, claims that in the case at bar we are primarily concerned with the Ohio law to determine if collateral attack was there permissible in the probate court, and on this point again relies upon the above-mentioned court of appeals case of *In re Estate of Frankenberg*.

Appellee answers by stating:

"While we are mindful of the fact that Michigan law prevails with respect to this question over that of other States, it may be of interest to the Court to see how the sister State of Ohio has ruled on it. As we have pointed out, Michigan does not have a case squarely in point.

"The general principle that third parties who are not parties or privies to the original litigation may not make a direct attack on a judgment either at law or in equity has application to divorce decrees and a stranger to the divorce action has no standing as a party to seek the action of a court to vacate a divorce decree. A divorce action in its nature is personal and even though the court has no jurisdiction to

grant the decree a third person does not stand in such relationship to the original suit as to be a proper party to institute the proceedings to set aside and vacate the decree.  See *Suiter* v. *Suiter,* 74 Ohio App 44 (57 NE2d 616)."

The Connecticut supreme court in *Tyler* v. *Aspinwall,* 73 Conn 493 (47 A 755, 54 LRA 758), commented upon plaintiffs' (heirs of Charles D. Tyler, now deceased) attack upon defendant's Connecticut divorce prior to her marriage to Charles D. Tyler, on the ground that defendant had no domicile in Connecticut at the time of divorce.  The headnote, as this Connecticut opinion is reported in 54 LRA 758, reads:

"A man's heirs-at-law cannot maintain a suit to set aside a fraudulent divorce from a third person of a woman whom he afterwards attempted to marry, for the purpose of defeating her claims upon his estate, where they were not parties to the divorce proceedings and had no interest therein."

The pertinent portions of the opinion follow (pp 498, 499):

"The judgment which the plaintiffs seek to open is one of a peculiar character.  It establishes the personal status of the parties to it in a particular which was of the highest importance to the parties and to the community.  They had been married.  It made them single and unmarried.  If such a judgment can, under any circumstances, be reopened at the suit of a stranger, this judgment cannot be reopened at the suit of the plaintiffs.  Its consequences, if harmful to them, are of too remote and indirect a character to give them any cause of action.  The court is not called upon to exercise this power at the instance of such parties.  Courts are instituted to give relief to parties whose rights have been invaded, and to give it at the instance of such parties; and a party whose rights have not been invaded cannot be heard

to complain if the court refuses to act at his instance in righting the wrongs of another who seeks no redress. The courts are practically unanimous in holding that it is not error to refuse to exercise the power here in question, at the instance of a mere stranger whose rights are not at all affected by the judgment he seeks to have set aside. (Citing cases.) This is merely a special application of the wide, general principle that courts will act only in behalf of parties who show themselves entitled to such action. They sit to vindicate rights at the instance of parties whose rights have been invaded, and not to vindicate mere abstract principles of justice at the instance of any one. * * *

"The mere fact that the setting aside of the judgment would be an advantage to the plaintiffs is not enough; they must show that some legal or equitable right of theirs was invaded by the judgment, before they can complain of the refusal of the court to act upon their petition to have it set aside."

The trial court stresses a Washington supreme court decision, stating "The case of *In re Englund's Estate*, 45 Wash2d 708, (277 P2d 717), is almost directly in point," and analyzes and comments on the *Englund* decision as follows:

"In that case Al Englund died intestate in 1951, and his widow, Pearl, was appointed administratrix. Al's sister, Ida Dahlberg, filed a petition to have Pearl removed, alleging that her marriage to Al was illegal because her prior divorce in Idaho from Chris Tashos was void because neither party was domiciled in Idaho at the time of the divorce. The trial court found no domicile in Idaho and removed Pearl as administratrix. She appealed, saying that the court erred in allowing Al's sister to collaterally attack the Idaho decree, and the court, in reversing the judgment, held that neither party to the Idaho divorce was objecting to the decree; that Al Englund's sister, Ida Dahlberg, was a stranger to the divorce

proceedings and not in privity with either party thereto. The Idaho decree did not affect any rights or interest which Ida Dahlberg or the other collateral heirs had acquired prior to its rendition. Therefore, she had no right to attack it."

Appellant calls attention to the fact that this *Englund* decision is in conflict with the Massachusetts decision of *Old Colony Trust Co.* v. *Porter,* 324 Mass 581 (88 NE2d 135, 12 ALR2d 706), the second headnote of which case reads:

"In a proceeding for probate of the will of a woman who, after the making of the will, had entered into a marriage with a man divorced by a decree of a probate court, the proponent of the will, who, as well as persons interested thereunder, had been strangers to the divorce proceeding but would be injured through revocation of the will if the divorce and hence the marriage were valid, was entitled to attack the decree of divorce collaterally by a petition to strike out the appearance of the purported husband of the testatrix in opposition to the probate of the will and thereunder showing that the divorce court had had no jurisdiction of the divorce proceeding; it was immaterial that the interests of the proponent and persons represented by him were not adversely affected at the time of the entry of the decree of divorce."

While the parties here advocate we decide this case by choosing and applying 1 of the competing views of the courts of other States, we consider the controlling point in our decision to be the fact that the present case is encumbered by a number of factors which argue against this Court granting the relief sought, in addition to the factor of plaintiff's lack of interest at the time of the 1932 proceedings. Among these factors are: (1) The sworn petition for the 1932 divorce was considered by the court as an affidavit; (2) the 1932 defect caused no real injury

(the defect complained of is a minor irregularity); (3) the statute was substantially complied with and, in fact, notice was given and opportunity to defend was accorded, as contemplated by the statute; (4) the 1932 defendant is estopped from attacking the divorce decree (she chose not to defend and later accepted the divorce decree when notified of it and in fact presently acquiesces in the proceedings); (5) plaintiff's goal in voiding the 1932 proceedings is not to give the defendant in the 1932 proceedings proper notice and an opportunity to now defend against such proceedings, but, rather, plaintiff's interest is simply the realignment of those entitled to share in her sister's estate, thus enlarging plaintiff's share of same; (6) to achieve plaintiff's end this Court is asked to void a marriage presumed valid by the participants, and to resurrect a marriage presumed and desired dissolved by the parties thereto.

In a case clearly presenting to this Court the issue presented in *Old Colony Trust Co., supra,* and *Englund's Estate, supra,* this Court would undertake to make a choice between the conflicting opinions. But on the facts of this case we are not presented with the problem of determining and announcing which of the schools of thought Michigan will follow as to the sufficiency of interest of an heir to attack a divorce decree where the heir's interest did not exist at the time of the now attacked proceedings. We shall hold that task until we are presented with a case, the facts of which require a choice of the competing views.

To accomplish her far-reaching and unusual objective, plaintiff would have to present to this Court clear, convincing, and compelling law and facts. This, plaintiff has failed to do, and the following quotation from *Tyler* v. *Aspinwall, supra,* is applicable to this case: "If such a judgment can, under any circumstances, be reopened at the suit of a stranger,

this judgment cannot be reopened at the suit of the plaintiffs."

Affirmed. Costs to appellee.

CARR, C. J., and DETHMERS and SOURIS, JJ., concurred with KELLY, J.

BLACK and KAVANAGH, JJ., concurred in result.

O'HARA, J., took no part in the decision of this case.